DETROIT EDISON COMPANY, a corporation; and Protection Mutual Insurance Company, a corporation, Plaintiffs,

v.

NABCO, INC., f/k/a National Annealing Box Company, a corporation; National Annealing Box Company, a corporation; Pittsburgh Annealing Box Company, a corporation; Vectura Group, Inc., Corporation, a corporation; and Dravo Corporation, a corporation, Defendants.

No. 89–CV–70280–DT.

United States District Court, E.D. Michigan, Southern Division.

Nov. 6, 1992.

John W. Henke, Troy, MI, for plaintiffs.

John A. Kruse, Troy, MI, for defendants Vectura and Dravco.

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS DRAVO AND VECTURA

HACKETT, District Judge.

This is an action for recovery of damages resulting from a failure in a longitudinal weld in a hot reheat pipe at Detroit Edison's Monroe, Michigan plant. The theory upon which this case rests has been the subject of several dispositive motions and findings by this court. Defendants Dravo Corp. (Dravo) and Vectura Group, Inc. (Vectura)[1] were permitted to file supplementary motions for summary judgment in light of the recent Michigan Supreme Court decision in *Neibarger v. Universal Cooperatives Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992).

The Court in *Neibarger* clarified the application of the economic loss doctrine in Michigan and ruled on the use of the "other property" exception to the doctrine. Because this court has based its prior denial of summary judgment on that exception, the court must reconcile its determination of the applicability of the exception as guided by the Michigan Supreme Court.

Both parties have filed extensive supplemental briefs arguing the impact of the *Neibarger* decision on defendants' motion for summary judgment. Oral arguments have been heard.

### PRIOR FINDINGS

In an April 2, 1991, order denying summary judgment for defendants, this court stated and concluded:

In the instant matter, Edison and Dravo are both commercial entities that bargained for the pipe contract from positions of relatively equal strength. The pleadings indicate that Edison specially ordered the pipe and gave Dravo unique specifications for it. Accordingly, if plaintiffs seek only economic damages from the malfunctioning of the pipe, then the economic loss doctrine will apply to this suit and plaintiffs will have only contract remedies available for recovery.

In each count of the complaint, plaintiffs state that as a result of defendants' acts, "Edison sustained damage to its property and business for which it has not been compensated and Protection Mutual is subrogated to the extent of its payment to Detroit Edison." Plaintiffs have substantiated the damage to their property beyond

---

1. The complaint alleges that Vectura purchased Dravo's pipe fabrication division in 1988. Plaintiffs use the names Dravo and Vectura interchangeably.

the pipe itself and the Unit 1 turbine. The explosion caused damage to the floors, windows, walls and paneling of the energy plant. Asbestos was disbursed throughout the facility and a substantial cleanup operation was required. The court determines that these losses constitute damage to property beyond the pipe and turbine. Plaintiffs, therefore, may seek recovery under tort theories of law.

Order Denying Defendants' Motion for Summary Judgment, April 2, 1991, at pp. 4–5.

There are no changes in the court's prior factual findings. However, at the time summary judgment was denied to defendants, the Michigan Supreme Court "had not explicitly addressed the economic loss doctrine." *Neibarger*, 439 Mich. at 523, 486 N.W.2d at 616. The *Neibarger* opinion provides guidance regarding the doctrine which was previously unavailable. Thus, this court must apply the Court's interpretation of that doctrine to the facts in this case. *See Monette v. Am–7–7 Baking Co. Ltd.*, 929 F.2d 276, 280 (6th Cir.1991).

### THE ECONOMIC LOSS DOCTRINE

The economic loss doctrine is "a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." *Frey Dairy v. A.O. Smith Harvestore Products*, 886 F.2d 128, 129 (6th Cir.1989). The doctrine is applicable to suits in which "all the parties to a transaction are commercial enterprises of relatively equal strength, have bargained for the production and treatment of specially manufactured goods, and the only damages are commercial economic losses resulting from defects in the goods themselves. . . ." *Consumers Power Co. v. Mississippi Valley Structural Steel Co.*, 636 F.Supp. 1100, 1109 (E.D.Mich.1986). Business plaintiffs in such circumstances must look to the UCC for recovery rather than to tort remedies such as negligence or products liability.

In construing the economic loss doctrine, the Court in *Neibarger* held:

Where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the Uniform Commercial Code, including the four-year statute of limitations.

439 Mich. at 527, 528, 486 N.W.2d at 618.

The court emphasized important policy considerations:

[The economic loss doctrine] hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner traditionally remedied by the law of torts.

*Id.* at 521, 486 N.W.2d at 615.

\* \* \*

. . . [I]n a commercial transaction, the parties to a sale of goods have the opportunity to negotiate the terms and specifications, including warranties, disclaimers, and limitation of remedies. Where a product proves to be faulty after the parties have contracted for sale and the only losses are economic, the policy considerations supporting products liability in tort fail to serve the purpose of encouraging the design and production of safer products.

*Id.*, at 523, 486 N.W.2d at 616.

The *Neibarger* plaintiffs, dairy farmers, alleged that an entire vacuum system of their milking equipment had been improperly designed and installed. They claimed breach of express warranty, breach of implied warranty, and negligence. Specifically, plaintiffs' claims were for losses incurred when their cattle became ill, suffered a loss of milk production, and had severe instances of mastitis. 439 Mich. at 516, 517, 486 N.W.2d at 613. The Court found that the plaintiffs' losses were solely economic, resulting from the defective product which was purchased for commercial purposes. The Michigan Supreme Court upheld summary disposition for defendants, finding that plaintiffs' complaint was governed by the UCC and its four-year period of limitations. *Id.* at 537, 486 N.W.2d at 622.

Like the plaintiffs in the instant case, the plaintiffs in *Neibarger* argued that the eco-

**374**

nomic loss doctrine did not bar their claims because they were asserting damage to property other than the goods themselves. The Court recognized the exception carved out to allow tort claims for damages to property other than the defective product itself. *Id.* at 530, 486 N.W.2d at 619.

As to the property damages, the Court focused on the characterization of the injuries as economic losses, requiring consideration of the underlying policies of tort and contract law: "Although there is support for the view that the UCC does not bar a tort claim where the plaintiffs are seeking to recover for property other than the product itself, we find in these cases that, notwithstanding injury to the plaintiff's dairy herds, the damages claimed are economic losses." *Id.*

Important to this court's disposition of defendants' motion for summary judgment, the *Neibarger* Court continued:

... The proper approach requires consideration of the underlying policies of tort and contract law as well as the nature of the damages. The essence of a warranty action under the UCC is that the product was not of the quality expected by the buyer or promised by the seller. The standard of quality must be defined by the *purpose of the product, the uses for which it was intended, and the agreement of the parties. In many cases failure of the product to perform as expected will necessarily cause damage to other property;* such damage is often not beyond the contemplation of the parties to the agreement. Damage to the property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality (emphasis added).

*Id.* at 531, 486 N.W.2d at 619, 620. These policy considerations, which were vital to the Michigan Supreme Court's disposition, must be applied to the facts of the instant case and in evaluating the parties' arguments.

*A. Defendants' Arguments for Summary Judgment Under the Economic Loss Doctrine.*

Defendants argue that *Neibarger* mandates summary judgment in their favor because the decision makes plaintiffs' sole remedy the UCC. They state that because plaintiffs' claim did not comply with the UCC four-year statute of limitations which began running in 1970, when the pipes were delivered to Detroit Edison, the claims against defendants Vectura and Dravo should be dismissed. Defendants further argue that because the court's April 2, 1991, order denying Dravo's order for summary judgment was based on a finding that "because Edison suffered damage to property other than the pipe system at issue, the economic loss doctrine did not bar Edison's claims," the *Neibarger* decision warrants another view of the plaintiffs' claims under that doctrine.

Defendants contend that *Neibarger* stands for the proposition that there is no "other property" exception to the economic loss doctrine. Because *Neibarger* held so, defendants argue, the exception for law suits alleging damage to property other than the defective product, is no longer available under Michigan law. Defendants state that the *Neibarger* Court "expressly refused to adopt the so-called 'other property' exception to the doctrine, noting that damage to other property constitutes economic loss for which contract law provides the exclusive remedy. Therefore, this Court's [prior] finding does not properly reflect Michigan law" (Defendant's Supplemental Brief at 6).

This court does not read the *Neibarger* opinion to abrogate the "other property" exception. Rather, the Court acknowledged the possibility of tort claims, but found in these cases that, notwithstanding injury to the plaintiffs' dairy herds, the damages claimed are "economic losses." 439 Mich. at 530, 486 N.W.2d at 619.

Next, defendants argue that contrary to this court's April 2, 1991, order, the UCC does provide the exclusive remedies for damage to other property. Defendants contend that because the *Neibarger* court, in citing to various UCC express and implied warranties, stated that incidental and consequential dam-

ages were available under the UCC, UCC remedies are available for damages to other property which were adequate and did not implicate tort policies.

Finally, defendants contend that commercial entities may not pursue tort remedies under the UCC. Dravo argues that because of this court's prior finding that the parties are and were commercial entities which engaged in a commercial transaction for the sale of goods, and because the pipe contract was a "bargained for" contract by parties of relatively equal bargaining strength, the damages could have been provided for in the contract as intended by UCC policy.

### B. Plaintiffs' Arguments in Opposition to Summary Judgment.

In their response, plaintiffs argue that the *Neibarger* opinion does not preclude bringing their claims under theories of tort. Plaintiffs point out that this court has already considered the Michigan Court of Appeals opinion in *Neibarger v. Universal Cooperatives*, 181 Mich.App. 794, 450 N.W.2d 88 (1989), which dismissed plaintiffs' claim under the economic loss doctrine in the April 2, 1992, order. Plaintiffs argue that since the Michigan Supreme Court affirmed the appellate court's holding, the Court's opinion does not change Michigan law on the doctrine and should not alter the analysis of their claims.[2]

Plaintiffs also argue that even if the Supreme Court holding is a change in the law, the facts in *Neibarger* are distinguishable from the facts in the instant case. According to plaintiffs, the factual distinction is that Detroit Edison sustained more than economic losses through the catastrophic bursting of the pipe, while in *Neibarger*, plaintiffs claimed economic losses only, i.e., lost profits from the loss of cows and milk production. However, the Court in *Neibarger* focused not on the event which caused the damages, but

on the types of losses incurred and whether they stemmed from a commercial transaction. Plaintiffs also contend that, unlike *Neibarger*, the losses were not within the contemplation of the parties. At best, plaintiffs state, there is an issue of fact as to whether such losses were within the contemplation of the parties. This court does not read *Neibarger* to require the parties to have actually contemplated specific defects in products in order to have their business transaction fall under the economic loss doctrine. 439 Mich. at 532, 533, 486 N.W.2d at 620, 621.

Finally, according to plaintiffs, *Neibarger* is distinguishable because it did not consider other exceptions to the economic loss doctrine, such as: products which pose a safety hazard, *see Sullivan Ind., Inc. v. Double Seal Glass Co., Inc.*, 192 Mich.App. 333, 338–342, 342, 480 N.W.2d 623, 627–628, 629 (1991); *Consumers Power Co. v. Mississippi Valley Struct. Steel Co.*, 636 F.Supp. 1100, 1103–1104 (E.D.Mich.1986), or products which are part of an "accident problem," *see Sullivan Ind.* 480 N.W.2d at 627. Plaintiffs argue that the tort policies in the above-cited cases relating to public safety and risk allocation are implicated in this case. However, the Michigan Supreme Court did consider these exceptions, but still found the case of *Agristor Leasing v. Spindler*, 656 F.Supp. 653, 654 (D.S.D.1987), factually similar and the economic loss doctrine applicable. *Id.* 439 Mich. at 530, 531, 486 N.W.2d at 619, 620.

### ANALYSIS

 It is important to recognize that, while *Neibarger* adopted and recognized the economic loss doctrine as articulated by prior Michigan Court of Appeals opinions, the Court severely limited the "other property" exception. Further, the Court enunciated a clear, strong, and unavoidable policy message. In doing so, the Court agreed with the

---

**2.** Plaintiffs also characterize Dravo's supplemental brief as a motion for reconsideration and state that the court must only reverse its prior rulings based upon a significant change in the law. Plaintiffs state that because the recent Supreme Court holding does not represent a significant change in the law as it relates to the facts in this case, and because the court has already held that the economic loss doctrine does not apply to

this case, a reversal is not warranted. However, because the supplemental motion does not comply with Local Rule 7.1's requirement that a motion for reconsideration be served within ten days after entry of the order, the motion will be considered as a motion for summary judgment. Even if construed as a motion for reconsideration, *Neibarger* represents a significant limitation of Michigan law on the economic loss doctrine.

Minnesota Supreme Court in *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990) which opined:

> The steady stream of litigation attempting to qualify for the exceptional treatment of damage to other property has convinced us that the exception represents a retreat to the common law in derogation of the essence of the Uniform Commercial Code: a complete and independent statutory scheme enacted for the governance of all commercial transactions.[3]

*Neibarger*, 439 Mich. at 531, 532, 486 N.W.2d at 620.

The Michigan Supreme Court's agreement with this strong interpretation of the "other property" exception's applicability indicates that the exception must be applied within the parameters of its stated UCC policy considerations.

The Court in *Neibarger* referred specifically to the "contemplation of the parties" in defining whether damage to "other property" pulled a claim into the UCC economic loss doctrine. The Court stated: "Where damage to other property was caused by the failure of a product purchased for commercial purposes to perform as expected, and this damage was within the contemplation of the parties to the agreement, the occurrence of such damage could have been the subject of negotiations between the parties." 439 Mich. at 532, 486 N.W.2d at 620.

The Court concluded:

> Viewing the complaints in light of this testimony, it is apparent that the damages suffered by the plaintiffs are properly considered to be economic loss, the result of a defect in the quality of the milking systems they purchased. The plaintiffs made business decisions to purchase new milking systems, hoping, as Charles Houghton and Darwin Neibarger testified, to expand the size of their herds and, we presume, thereby increase their incomes. Their commer-

cial expectations were not met, however, and they experienced decreases in milk production and medical problems. Their complaints were properly viewed by the courts below as attempts to recover for lost profits and consequential damages, losses which are compensable under the UCC. Thus, these actions fall squarely within the economic loss doctrine and are governed by the provisions of the UCC, including its four-year statute of limitations.

*Id.* at 533, 486 N.W.2d at 621. Based upon this recent declaration of Michigan law on the "other property" exception to the economic loss doctrine, the court finds that summary judgment may be granted, as a matter of law, on the facts as presented in this case.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"[T]he standard for determining whether summary judgment is appropriate is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Booker v. Brown & Williamson Tobacco Co. Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties

---

**3.** Plaintiffs argue that the *Hapka* holding was undermined by the recent holding by the Minnesota Supreme Court in the case of *80 South Eighth Street Ltd. Partnership v. Carey–Canada Inc.*, 486 N.W.2d 393 (Minn.1992). Contrary to plaintiffs' assertion that *80 South Eighth Street* held that a claim for damages caused by asbestos contamination is necessarily a claim outside of the economic loss doctrine, the claim is easily distinguishable from the claim in the instant case. In *80 South Eighth Street*, the defendant, a manufacturer of insulation, had introduced the dangerous material into the building. The court characterized the plaintiff's complaint as one for personal injury, rather than a failure of the product to perform satisfactorily. 486 N.W.2d 393.

will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

*Neibarger* focused on the gravamen of the complaint rather than the nature of the event causing the damage. Further, in analyzing the losses, the Court clearly allowed economic losses to encompass damage to property other than the defective property itself. Applying *Neibarger*, the court notes that it has previously found that plaintiff Edison and defendants Dravo and Nabco were business entities and that they entered into a commercial transaction for the sale of the pipe which cracked and resulted in an explosion. Moreover, it is undisputed that Edison made particular business decisions, including designing and creating their specifications for the manufacture of the pipe. When the pipe did not perform according to Edison's commercial expectations, much damage occurred. However, given the nature of the use of the pipe, the damage was a consequence of the pipe's malfunction and would have been contemplated by the parties. Further, the cost of the damage could have been provided for in the contract. Plaintiffs' complaint may only be viewed as seeking damages for economic losses covered by UCC provisions.

### CONCLUSION

As a matter of law, plaintiffs have failed to state tort claims upon which relief can be granted. The four-year statute of limitations set forth in M.C.L.A. § 440.2725 governs and plaintiffs' claims are time-barred. Accordingly, defendants' motion for summary judgment is hereby GRANTED and plaintiffs' claims against defendants Dravo Corporation and Vectura Group, Inc. are hereby DISMISSED.

SO ORDERED.