NEIBARGER v UNIVERSAL COOPERATIVES, INC

Docket No. 111029. Submitted May 9, 1989, at Grand Rapids. Decided
    December 28, 1989. Leave to appeal applied for.

    Darwin E. and Patricia L. Neibarger, who owned and operated a
    dairy farm, entered into a contract with Charles Brinker, doing
    business as Brinker Refrigeration Service, for the installation
    of a milking system designed by Universal Cooperatives, Inc.,
    and Brinker. The Neibargers subsequently brought an action in
    the Mecosta Circuit Court against Universal and Brinker,
    alleging that the milking system was defective and its opera-
    tion resulted in a loss of milk production and disease or death
    to their cows. Plaintiffs claimed breach of express warranty,
    breach of implied warranty, and negligence. The trial court,
    Lawrence C. Root, J., granted summary disposition in favor of
    defendants, ruling that, on the basis of the economic loss
    theory, plaintiffs' remedy is to be found in the Uniform Com-
    mercial Code, but their action was barred by the four-year
    period of limitations provided under the UCC for a claim of
    breach of a contract for the sale of goods. Plaintiffs appealed.

    The Court of Appeals held:

    1. The economic loss doctrine bars recovery in tort where the
    relationship between the parties is contractual and the only
    losses alleged are economic. The doctrine is used when a
    contract does not spell out the legal remedies contemplated by
    the parties with clarity and when the provisions of a contract
    do not specifically waive tort remedies in favor of enumerated
    contract remedies. The doctrine applies in this case to bar
    recovery in tort as plaintiffs' damages consist solely of economic
    loss.

    2. A contract for the sale of goods and the provision of
    services at one contract price is subject to the provisions of the
    UCC where, as here, it is primarily for the sale of goods with
    services being incidentally involved. The trial court did not err
    in ruling that plaintiffs' action was filed more than four years

REFERENCES

Am Jur 2d, Sales §§ 716, 929, 930, 937, 939.
See the Index to Annotations under Limitation of Actions; Sale and
    Transfer of Property; Services; Uniform Commercial Code.

after it accrued and that it was therefore barred under the UCC's four-year statute of limitations.

Affirmed.

1. SALES — UNIFORM COMMERCIAL CODE — LIMITATION OF ACTIONS — BREACH OF CONTRACT.

A claim for breach of a contract for the sale of goods is subject to a four-year period of limitations and accrues when the breach occurs, regardless of the aggrieved party's knowledge of the breach, except when a warranty explicitly extends to future performance of the goods (MCL 440.2725[2]; MSA 19.2725[2]).

2. CONTRACTS — BREACH OF CONTRACT — REMEDIES — ECONOMIC LOSS DOCTRINE.

The economic loss doctrine bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic; the doctrine is used when a contract does not spell out the legal remedies contemplated by the parties with clarity and when the provisions of a contract do not specifically waive tort remedies in favor of enumerated contract remedies.

3. CONTRACTS — SALE OF GOODS — PROVISION OF SERVICES — UNIFORM COMMERCIAL CODE.

A contract for the sale of goods and the provision of services at one contract price is subject to the provisions of the Uniform Commercial Code where it is primarily for the sale of goods with services being incidentally involved (MCL 440.2101 *et seq.*; MSA 19.2101 *et seq.*).

*Reber, Greer, Schuiteman, Stariha & Greer, P.C.* (by *Paul L. Greer*), for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *David H. Aldrich* and *Michael S. Wellman*), for Universal Cooperatives, Inc.

*Mika, Meyers, Beckett & Jones* (by *Douglas A. Donnell*), for Charles Brinker.

Before: HOLBROOK, JR., P.J., and SAWYER and NEFF, JJ.

PER CURIAM. Plaintiffs appeal as of right from

an order of the circuit court granting summary disposition pursuant to MCR 2.116(C)(7) to defendants on the basis of the running of the four-year period of limitations as provided in the Uniform Commercial Code, MCL 440.2725; MSA 19.2725. We affirm.

I

Plaintiffs, owners and operators of a dairy farm, contracted with defendant Charles Brinker to install a milking system. According to plaintiffs, the milking system was designed by defendants Universal Cooperatives, Inc., and Brinker, and was installed by Brinker to begin milking operations on September 1, 1979.

Plaintiffs allege that, after the milking system had been in operation for a period of time, their cattle became ill and died or had to be sold for beef because of their nonproductivity and unsuitability as milking animals, suffered a loss of milk production, had severe instances of mastitis, and experienced a loss of a portion of their udders. Consequently, plaintiffs claim, they were prevented from reaching their herd potential.

Plaintiffs alleged that it was not until fall of 1986 that they discovered that the entire vacuum system on the milking equipment had been improperly designed and installed. Plaintiffs brought suit against defendants on April 13, 1987, and proceeded against them on three theories: breach of express warranty, breach of implied warranty, and negligence. The trial court granted summary disposition to defendants on the basis of the running of the statutory period of limitations, and plaintiffs appealed to this Court.

II

The primary issue before this Court is whether

plaintiffs' ʳcause of action is controlled by the statute of limitations contained in the Revised Judicature Act, MCL 600.5807; MSA 27A.5807, or by that contained in the Uniform Commercial Code, MCL 440.2725; MSA 19.2725.

The UCC contains a four-year period of limitations for breach of contract, and, absent a specific warranty pertaining to future performance of the goods sold, a cause of action under the UCC accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *H Hirschfield Sons, Co v Colt Industries Operating Corp,* 107 Mich App 720, 723-724; 309 NW2d 714 (1981), lv den 413 Mich 953 (1982); MCL 440.2725(2); MSA 19.2725(2).

The RJA, on the other hand, contains a six-year period of limitations in actions for breach of contract. *Hirschfield, supra,* p 724; MCL 600.5807(8); MSA 27A.5807(8). Moreover, in actions for damages based on breach of warranty of quality or fitness, the claim accrues at the time the breach of warranty is discovered or reasonably should be discovered. *Hirschfield, supra;* MCL 600.5833; MSA 27A.5833.

### III

The trial court granted summary disposition to defendants pursuant to MCR 2.116(C)(7), finding that, on the basis of the economic loss theory, plaintiffs' remedy is to be found in the UCC. The trial court further found that the four-year period of limitations provided in the UCC is applicable, that the instant action was filed far in excess of four years after the date of accrual, and, consequently, plaintiffs' action is barred by the statute of limitations.

The Sixth Circuit Court of Appeals, in *Frey*

*Dairy v A O Smith Harvestore Products, Inc,* 886 F2d 128, 129 (CA 6, 1989), defined the economic loss doctrine as

> a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic. The doctrine is used when a contract does not spell out the legal remedies contemplated by the parties with clarity and when the provisions of a contract do not specifically waive tort remedies in favor of enumerated contract remedies.

In *Frey,* the Sixth Circuit Court of Appeals certified to our Supreme Court the very issue involved here: Whether, under Michigan law, the economic loss doctrine operates to bar tort claims sounding in negligence where the foundation of the parties' relationship is contractual and the only losses alleged are economic losses. Our Supreme Court declined to answer the question.

However, in *McGhee v General Motors Corp,* 98 Mich App 495, 505; 296 NW2d 286 (1980), this Court, quoting from *S M Wilson & Co v Smith International, Inc,* 587 F2d 1363, 1376 (CA 9, 1978), adopted the economic loss doctrine and stated:

> Where the suit is between a non-performance [sic] seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual Survey of Texas Law,* 25 SW L J 1, 5 (1971); Franklin, *When Worlds Collide; Liability Theories and Disclaimers in Defective-Product Cases,* 18 Stan L Rev 984,

996-97, 1012-14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference.

The issue that must be decided here is whether plaintiffs' losses are economic and thus not recoverable under a negligence theory. Defendants assert that plaintiffs' entire damages can only be characterized as economic losses. Plaintiffs attempt to avoid the economic loss doctrine by asserting that the alleged defective milking system caused damage to their dairy herd which is, they claim, damage to property other than to the goods themselves. We disagree.

Plaintiffs seek recovery for losses allegedly caused by a defective milking system that they purchased for their dairy farm, a commercial operation. Specifically, the milking system caused medical and production problems with plaintiffs' dairy cattle and lost profits. The damages claimed are economic and therefore not recoverable in tort. See *Agristor Leasing v Spindler,* 656 F Supp 653, 658 (D SD, 1987); *Wight v Agristor Leasing,* 652 F Supp 1000, 1017 (D Kan, 1987); *Agristor Leasing v Meuli,* 634 F Supp 1208, 1217-1218 (D Kan, 1986); *Agristor Leasing v Guggisberg,* 617 F Supp 902, 908 (D Minn, 1985); *Holstad v Southwestern Porcelain, Inc,* 421 NW2d 371, 375 (Minn App, 1988).

IV

Plaintiffs also argue that it was the services performed by defendants, rather than the goods provided, which caused injury to their cattle, and, therefore, this case is governed by the RJA and not the UCC.

The provisions of article 2 of the UCC (Sales),

MCL 440.2101 *et seq.*; MSA 19.2101 *et seq.*, apply to transactions in goods. MCL 440.2102; MSA 19.2102. The term "goods" is defined as follows:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 2107). [MCL 440.2105(1); MSA 19.2105(1).]

There is no dispute that the component parts of plaintiffs' milking system were "goods" as defined in the UCC. However, it is also clear that the contract between the parties contained elements of service because it included installation.

Defendants urge this Court to adopt the rule stated in *Bonebrake v Cox,* 499 F2d 951 (CA 8, 1974), with respect to contracts for mixed goods and services. The *Bonebrake* court articulated the following test to determine whether mixed contracts for goods and services fall within the UCC:

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose reasonably stated, is the rendition of service with goods incidentally involved (*e.g.,* contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.,* installation of a water heater in a bathroom). [*Bonebrake, supra,* p 960.]

Minnesota courts also employ a "predominant factor" test to determine whether a contract is

primarily for the sale of goods or the provision of services. See *Valley Farmers' Elevator v Lindsay Bros Co,* 398 NW2d 553, 556 (Minn, 1987); *Holstad, supra,* p 373.

Plaintiffs rely on *Hirschfield, supra,* to argue that the contract giving rise to their claim was one for services, and, specifically, for installation of the milking system. In *Hirschfield, supra,* p 727, this Court held that the UCC was inapplicable where the plaintiffs' claim related exclusively to the improper installation of goods and where the contract contained a separate price for installation. The Court in *Hirschfield* specifically limited its holding to the narrow facts of the case before it and reserved comment on the rule expressed in *Bonebrake* involving mixed goods and services contracts and a single total contract price. The *Hirschfield* Court also noted that the divisibility of the contract in that case was significant because the plaintiff's claim was one based entirely on the deficiencies in the rendition of services for which the contract contained a separate price rather than on any defect in the goods themselves.

The instant case does not fit within the narrow facts of *Hirschfield,* and we adopt the test set forth in *Bonebrake.* The contract here does not include a separate price for installation or even designate installation as a distinct item. Plaintiffs refer on appeal to a July 5, 1979, contract for the sale and installation of a milk tank, which lists installation as "included," as evidence that there was a separate contract for installation. The contract to which plaintiffs refer, however, is not that which is identified in their complaint. Rather, the complaint refers to a contract entered on May 22, 1979. Moreover, despite plaintiffs' statement on appeal that their claims relate only to services rendered by defendants, reference to the complaint

itself shows that plaintiffs' claims relate to the inadequacy of both goods and services.

The rule expressed in *Bonebrake* leads to the conclusion that the transaction involved here was a sale of goods with labor, i.e., services, incidentally involved.

v

The transaction involved here was that of a sale of goods with services incidentally involved. Plaintiffs' damages consisted solely of economic loss. Accordingly, we find that plaintiffs' remedies fall within the UCC, with its attendant four-year period of limitations, which began to run at the time of delivery.

Affirmed.