BAKER v DEC INTERNATIONAL

Docket No. 178000. Submitted July 1, 1996, at Lansing. Decided August 13, 1996, at 9:05 A.M. Leave to appeal sought.

Gerald M. and Eleanor S. Baker brought an action in the Ingham Circuit Court against DEC International and Tri County Dairy Equipment, Inc., alleging, among other claims, breach of the warranty of the merchantibility of a milking system that Tri County sold to and installed for the plaintiffs pursuant to a contract and that included components manufactured by DEC. The defendants moved for summary disposition, arguing that the action, commenced on September 10, 1993, was barred by the four-year limitation period of § 2-275 of the Uniform Commercial Code, MCL 440.2725(1), (2); MSA 19.2725(1), (2), which, absent an express warranty relating to the future performance of the goods in question, requires that an action for breach of warranty be commenced within four years of tender of delivery of the goods. DEC contended that tender of delivery of the milking system occurred on July 31, 1989, when the components arrived on the plaintiffs' premises and the plaintiffs paid a payment that, under the contract between the plaintiffs and Tri County, was due on "delivery." Tri County contended that tender of delivery occurred on September 8, 1989, when the milking system was installed and its operation was demonstrated to the plaintiffs. The plaintiffs contended that tender of delivery occurred on September 12, 1989, when the milking system was tested, approved, and licensed by the Michigan Department of Agriculture for commercial operation. The court, Carolyn Stell, J., granted summary disposition for the defendants, ruling that tender of delivery occurred on July 31, 1989. The plaintiffs appealed.

The Court of Appeals *held*:

1. When, as in this case, installation is required under a sales contract, tender of delivery occurs when installation is complete.

2. Given a factual dispute in this case regarding when installation was completed, the order granting the defendants summary disposition based on the statute of limitations must be reversed and the case must be remanded so that the trier of fact can determine when installation was completed.

3. The fact that certain affidavits submitted by the plaintiffs did not comply with requirements under MCR 2.116(G)(1) and MCR 2.119(B) concerning personal knowledge by the affiants or a showing that the affiants could testify competently to the facts stated in the affidavits constituted harmless error in the absence of a showing by Tri County of prejudice resulting from the noncompliance.

Reversed and remanded for further proceedings.

SALES — UNIFORM COMMERCIAL CODE — BREACHES OF CONTRACT — LIMITATION OF ACTIONS.

An action for the breach of the warranty of the merchantibility of goods under a contract of sale that requires installation of the goods by the vendor occurs when installation is complete where there are no express warranties regarding the future performance of the goods; such an action must be brought within four years of accrual (MCL 440.2725[1], [2]; MSA 19.2725[1], [2]).

*Reber, Greer, Schuiteman, Stariha & Greer, P.C.* (by *Paul L. Greer*), for Gerald M. and Eleanor S. Baker.

*Bremer, Wade, Nelson, Lohr & Corey* (by *William M. Bremer* and *Phillip J. Nelson*), for DEC International.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Peter L. Dunlap* and *Brian D. Herrington*), for Tri County Dairy Equipment, Inc.

Before: MURPHY, P.J., and O'CONNELL and M. J. MATUZAK,* JJ.

O'CONNELL, J. Plaintiffs appeal as of right from an August 3, 1994, order of the Ingham Circuit Court granting defendants summary disposition on the basis that plaintiffs' claim for breach of implied warranty of merchantability was untimely under the four-year period of limitation provided in the Uniform Commer-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cial Code, MCL 440.2725; MSA 19.2725. We reverse and remand the case to the trial court.

On May 11, 1989, plaintiffs, commercial dairy farmers, entered into a contract with Tri County Dairy Equipment, Inc., for the purchase of a milking system. The component parts were purchased from DEC International, the manufacturer. The contract called for a ten percent down payment, sixty percent of the purchase price on "delivery," and thirty percent at "finish." Plaintiffs paid Tri County sixty percent of the purchase price on July 31, 1989. Tri County thereafter installed the milking system.

The parties dispute whether installation was completed and the system was operational on September 8 or September 12, 1989. Plaintiffs claim installation was completed on September 12, 1989, and that the system was tested, approved, and licensed for commercial operation by the Michigan Department of Agriculture on that day. Defendants contend that the system was installed and ready for operation on or before September 8, 1989, and that operation of the system was demonstrated for plaintiffs at that time.

Plaintiffs filed suit on September 10, 1993, claiming that the milking system was defective. Plaintiffs' complaint included claims of breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, fraud, and breach of duty to warn. DEC moved for summary disposition, arguing that plaintiffs' breach of warranty of merchantability claim was barred by the four-year period of limitation of the UCC, MCL 400.2725(2); MSA 19.2725(2). DEC claimed that tender of delivery of the milking equipment occurred on July 31, 1989. Tri County also filed a motion for summary disposition, arguing that the

milking system was installed and ready for operation no later than September 8, 1989, and, therefore, plaintiffs' suit was untimely.

The trial court granted defendants summary disposition with regard to plaintiffs' breach of warranty of merchantability claim, holding that the statute of limitations began to run on July 31, 1989, when tender of delivery occurred. The trial court also granted defendants summary disposition with regard to plaintiffs' claims of breach of warranty of fitness for a particular purpose and breach of duty to warn. Defendants subsequently moved for summary disposition of plaintiffs' fraud claim, which was granted by the trial court.[1]

On appeal, plaintiffs argue that the four-year period of limitation provided by the UCC commenced on September 12, 1989, when the milking system was installed and ready for operation and had been approved by the Department of Agriculture. They claim that component parts of the system were delivered to their property from time to time as the system was installed and, therefore, the time of delivery presents a question of fact for the jury's consideration.

DEC maintains that tender of delivery occurred on July 31, 1989, when plaintiffs paid Tri County sixty percent of the purchase price due on "delivery" under the contract. DEC asserts that the contract between plaintiffs and Tri County did not require that the equipment sold by DEC must first be assembled and installed by Tri County before delivery will be

---

[1] Only the trial court's ruling with regard to plaintiffs' breach of warranty of merchantability claim is at issue in this appeal.

deemed to have occurred, that the assembled milking system must first be tested before delivery will be deemed to have occurred, that any performance standards must be met, or that the milking system must be examined and accepted by plaintiffs or certified for commercial use by the Department of Agriculture before delivery will be deemed to have occurred. Even if the equipment was not delivered to plaintiffs on July 31, 1989, DEC contends, plaintiffs have not effectively contested the fact that the equipment was delivered to them by September 8, 1989, at the very latest, the date by which the system was installed and its operation was demonstrated for plaintiffs. Similarly, Tri County argues that final "installation," "approval," "testing," or "acceptance" is not relevant to determining when "tender of delivery" occurs under the UCC and that plaintiffs presented no competent evidence to dispute that the equipment was installed and operational by September 8, 1989.

We believe that the trial court erred in determining that tender of delivery of the milking equipment occurred on July 31, 1989, and believe that a question of fact remains regarding the date the system was installed. Therefore, defendants were not entitled to summary disposition and the trial court's order is reversed.

When reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must accept as true the plaintiff's well-pleaded factual allegations and construe them in the plaintiff's favor. *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365, 376-377; 532 NW2d 541 (1995). The court must look to the pleadings, affidavits, or other documentary evidence to determine whether there is

a genuine issue of material fact. *Id.* at 377. If no facts are in dispute, and reasonable minds could not differ regarding the legal effect of those facts, whether the plaintiff's claim is barred by the statute of limitations is a question for the court as a matter of law. *Id.* However, if a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. *Id.*

Article 2 of the UCC applies to transactions in goods. MCL 440.2102; MSA 19.2102. The component parts of the milking system are "goods" as defined in the UCC. See MCL 440.2105(1); MSA 19.2105(1); *Neibarger v Universal Cooperatives, Inc*, 181 Mich App 794, 800; 450 NW2d 88 (1989), aff'd 439 Mich 512; 486 NW2d 612 (1992). The period of limitation for lawsuits involving transactions in goods is set forth in MCL 440.2725; MSA 19.2725, which provides in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Therefore, absent an express warranty extending to future performance of the goods, *Cambridge Plating Co, Inc v Napco, Inc*, 991 F2d 21; 20 UCC Rep 2d 739 (CA 1, 1993), an action for breach of warranty under

the UCC must be commenced within four years of tender of delivery of the goods.

"Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition." MCL 440.2503(1); MSA 19.2503(1). Despite the language "conforming goods," the term has been used to refer to goods offered in fulfillment of a contract even if there is a defect when the goods are measured against the specific contract obligations. See Comment 1, MCL 440.2503(1); MSA 19.2503(1). Thus, even delivery of nonconforming goods may constitute tender of delivery. *H Sand & Co, Inc v Airtemp Corp*, 738 F Supp 760, 766 (SD NY, 1990), modified 934 F2d 450 (CA 2, 1991); *Long Island Lighting Co v Transamerica Delaval, Inc*, 646 F Supp 1442, 1455 (SD NY, 1986). See also *Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 212 Mich App 522, 525, n 2; 538 NW2d 424 (1995) ("Under the UCC's statute of limitations, an action accrues when the nonconforming goods are delivered.").

DEC delivered the equipment to Tri County on July 26 and July 28, 1989, and plaintiffs paid Tri County sixty percent of the purchase price due on "delivery" under the contract on July 31, 1989. DEC's conclusion that tender of delivery must therefore have occurred on July 31, 1989, is without merit. In *Huron Tool, supra* at 377-378, this Court rejected the defendants' claim that the plaintiff's tender of full payment should be deemed tantamount to completion of the contract where the contract merely stated that the last payment was due upon completion of installation. The Court found that the defendants read too much into the terms as defined in the contract and that their interpretation would penalize the purchaser who pre-

pays and would reward delay. *Id.* at 378. The fact that plaintiffs paid Tri County sixty percent of the purchase price on July 31, 1989, is not determinative of when tender of delivery occurred.

Plaintiffs' contract with Tri County called for the sale and installation of the component parts of the milking system.[2] In *Neibarger v Universal Cooperatives, Inc, supra,* 439 Mich 512, 527-528, the Supreme Court affirmed this Court's decisions in *Neibarger v Universal Cooperatives, Inc, supra,* 181 Mich App 794, and *Houghton v Alfa-Laval, Inc,* 184 Mich App 731; 459 NW2d 42 (1990), holding that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations. In finding that the actions were time-barred because they were not brought within the four-year period of limitation in MCL 440.2725; MSA 19.2725, this Court stated that the period began to run "upon delivery," or "at the time of delivery." *Houghton, supra* at 734; *Neibarger, supra,* 181 Mich App 802. However, the Supreme Court did not consider whether installation was relevant to the issue of tender of delivery.

No Michigan case has considered the issue raised by this appeal. Therefore, we may follow the decisions of other courts considering the issue. See MCL 440.1102(2)(c); MSA 19.1102(2)(c). Some courts have held that tender of delivery does not occur until

---

[2] Although the contract does not state that Tri County was responsible for installing the system, it provides that thirty percent of the purchase price was due at "finish," which indicates that Tri County was required to complete installation of the component parts of the system. The parties do not dispute that Tri County was responsible for installation.

installation has been completed. In *Dreier Co, Inc v Unitronix Corp*, 218 NJ Super 260; 527 A2d 875 (1986), the Superior Court of New Jersey held that a cause of action for breach of warranty in the sale of a computer system does not accrue until tender of delivery and installation of the entire system, including the customized software programs ordered by the vendee. In making this determination, the court stated: "Until the full system is 'installed' and used by the vendee, the vendee cannot fully evaluate the system to determine whether it substantially complies with the vendee's specifications," and "[u]tilizing the date of delivery of the hardware as the triggering date for statute of limitation purposes places the vendee in the position of having to evaluate an incomplete product." *Id.* at 270.

Similarly, in *Dowling v Southwestern Porcelain, Inc*, 237 Kan 536; 701 P2d 954 (1985), the Supreme Court of Kansas held that the statute of limitations for breach of contract in an action against the manufacturer of a silo started to run on the date the installation of the silo was completed. The court noted that the plaintiffs purchased a "package deal" — they did not purchase the raw equipment, separate from the installation, but contracted for a finished silo. *Id. at 543.* The court also noted that the manufacturer had an interest in the installation, erection, and operation of the completed silo, and that the purchasers would have no way of testing the silo or of determining whether it was proper and acceptable until the contract for installation was complete. *Id.* See *Jandreau v Sheesley Plumbing & Heating Co, Inc*, 324 NW2d 266, 270 (SD, 1982) ("When installation is required under a sales contract, tender of delivery occurs not

when the goods are physically brought to the site, but rather when installation is complete.").[3]

In *Willmar v Short-Elliott-Hendrickson, Inc*, 475 NW2d 73; 15 UCC Rep 2d 912 (Minn, 1991), the Supreme Court of Minnesota considered when tender of delivery occurred in the context of an action against a supplier of component parts incorporated into a larger system. The court noted that adopting the plaintiff's position that tender of delivery does not occur until the overall system is accepted by the purchaser would be unreasonable because the supplier would be subjected to a lengthy period of potential liability dependent on construction delays completely outside its control. The court found that the supplier's contention that the plaintiff's cause of action accrued immediately upon delivery of the component parts to the job site was equally unreasonable because the plaintiff had no ground upon which to base an action for breach of warranty until the parts were installed and operational. *Id.* at 80-81. The court determined that until the component parts were installed and initially tested, there was no tender of delivery of goods conforming to the contract and no breach of the supplier's guarantee to provide parts that would satisfy specified performance standards. However, the court stated, once the parts failed to meet the stated requirements, the plaintiff's cause of action accrued and the period of limitation began to run. *Id.* at 81. Because the suit was filed five years after installation of the parts was substantially complete and the parts

---

[3] Although this Court has stated that, "[i]n the sale of machinery, the seller typically must complete the machine and tender performance consistent with the contract," *Huron Tool, supra* at 376, the statement was not explained.

failed to pass the required contractual performance guarantees, it was barred by the UCC statute of limitations. *Id.*

However, in *Long Island Lighting Co v Transamerica Delaval, Inc, supra,* the district court rejected the plaintiff's argument that tender of delivery of generators to be used in the construction of a nuclear power plant was not made when the generators where shipped in 1976, but rather when they were installed in 1981. The generators were stored for a lengthy period before installation, and the defendant had continuing responsibility for supervising the installation. Although the plaintiff relied on *City of New York v Pullman, Inc,* 662 F2d 910 (CA 2, 1981), cert den sub nom *Rockwell Int'l Corp v City of New York,* 454 US 1164 (1982), the district court found that case inapposite. In *Pullman,* it was held that the delivery of ten subway cars for testing pursuant to the contract was not "tender of delivery," but rather a fulfillment of a contract requirement. Tender of delivery was found to have occurred after completion of the on-line testing of the cars, when delivery of the remaining cars began. 662 F2d 919. Unlike the defendant in *Pullman,* the defendant in *Long Island Lighting Co* delivered the entire order of goods in 1976 and the parties' contract did not require the goods to be tested to assure conformance with the contract before delivery was complete. 646 F Supp 1454-1455. Therefore, the district court held that tender of delivery coincided with actual delivery of the generators. *Id.* at 1455.

The statute of limitations issue has been considered in other cases involving postdelivery testing of the goods. In *H Sand & Co, Inc v Airtemp Corp, supra,*

the plaintiff argued that tender of delivery of four chillers for an air conditioning system did not occur when physical possession of the chillers was transferred from the manufacturer to the plaintiff's agent, but occurred after the fourth chiller was subsequently returned to the manufacturer for testing because no testing had been done before shipping. Alternatively, the plaintiff argued that its plans and specifications required certain testing and service of the equipment after installation of the chillers and that delivery could not have been completed until those conditions were met. 738 F Supp 765-766. Because the delivery of nonconforming goods may constitute tender of delivery, the district court stated that it was not precluded from finding that tender of delivery occurred when all four chillers were shipped to the plaintiff's agent. *Id.* at 766.

The district court distinguished the decision in *Pullman, supra,* stating that that case presented a unique factual situation in which the parties had agreed to an on-line inspection period that involved only a small percentage of the total goods, and, once the inspection period was over and delivery of the goods began, the period of limitation began running. 738 F Supp 766-767. In contrast, the contract in *H Sand* did not provide for a finite period of inspection or spell out specific testing measures, and, thus, unlike *Pullman,* did not postpone tender of delivery. *Id.* See *Cincinnati v Dorr-Oliver, Inc,* 659 F Supp 259, 261-262 (D Conn, 1986) (tender of delivery occurred when the goods were physically delivered to the buyer and was not contingent upon inspection, testing, or acceptance of the goods even though the sales contract required extensive testing before and

after the buyer obtained possession of the goods); *Ontario Hydro v Zallea Systems, Inc*, 569 F Supp 1261, 1268 (D Del, 1983) (tender of delivery occurred when the goods were delivered to the job site; the district court rejected the plaintiff's argument that the period of limitation could not begin to run until the plaintiff had inspected the goods and determined whether they in fact conformed to the contract where the inspection clause in the contract was not directed to the tender of delivery aspect but rather to the plaintiff's right to reject the goods once they were delivered).

We find that the decisions in *Dreier*, *Dowling*, and *Willmar* represent the better-reasoned view. Therefore, we hold that tender of delivery should not be deemed to have occurred in this case until installation of the milking system was complete. Plaintiffs could not fully evaluate or test the milking system to determine whether it was proper and acceptable until that time. Plaintiffs purchased a "package deal" — they did not purchase the raw equipment, separate from the installation, but contracted for a finished milking system. Although DEC was not a party to any contract with plaintiffs for the provision of services, the call reports of a district manager of DEC indicate that Tri County was a local dealer of DEC, that he assisted in the installation of plaintiffs' milking system over several days in August and September 1989, and that he demonstrated operation of the system for plaintiffs in September 1989. Like the manufacturer of the silo in *Dowling*, DEC had an interest not only in the quality of the merchandise supplied but also in the installation and operation of the completed unit.

Because tender of delivery did not occur until installation of the milking system was complete, summary disposition in favor of defendants must be reversed because there is a genuine issue of fact regarding when installation was complete, *Huron Tool, supra* at 377, for which a jury trial is required. *Kermizian v Sumcad,* 188 Mich App 690, 692 ff; 470 NW2d 500 (1991). The parties dispute whether installation was completed and the system was operational on September 8 or September 12, 1989. Plaintiffs claim that installation was completed on September 12, 1989, and that the system was tested, approved, and licensed for commercial operation by the Michigan Department of Agriculture on that day. Defendants contend that the system was installed and ready for operation on or before September 8, 1989, and that operation of the system was demonstrated for plaintiffs at that time. Depending on when installation was completed, September 8 or September 12, 1989, plaintiffs' suit, filed on September 10, 1993, may have been timely. Given the failure of the contract to expressly address the question, reasonable minds could conclude that "tender of delivery" occurred only when a legally usable milking system, as determined by a Department of Agriculture inspection pursuant to MCL 288.102c; MSA 12.672(3) and related regulations was ready for use by the purchaser.

Tri County also claims that the affidavits submitted by plaintiffs are defective because they failed to comply with MCR 2.116(G)(1) and 2.119(B) and did not state that they were made on personal knowledge or show affirmatively that the affiants could testify competently to the facts stated in the affidavits. In opposing summary disposition in the trial court, plaintiffs

presented four affidavits: two affidavits of plaintiff Gerald Baker; an affidavit of Ronald Fellows, an employee of plaintiffs during September 1989; and an affidavit of Sydney Turkovich, an employee of the Michigan Department of Agriculture. The affidavits do not state that they were made on personal knowledge or that the affiants could testify competently to the facts stated in the affidavits as required by MCR 2.119(B)(1)(a) and (c).[4] Although the affidavits violate the court rules, absent a showing of prejudice resulting from noncompliance with the rules, any error is harmless. *Hubka v Pennfield Twp*, 197 Mich App 117, 119-120; 494 NW2d 800 (1992), rev'd on other grounds 443 Mich 864 (1993). From their contents, the affidavits show that the affiants had first-hand knowledge of the alleged facts and would be competent to testify regarding those facts. Therefore, the errors were harmless.

Summary disposition in favor of defendants is reversed and the case is remanded to the trial court for further proceedings. We do not retain jurisdiction.

---

[4] Ronald Fellows' affidavit does state that he could testify with certainty that the start-up of the milking system occurred on September 12, 1989.