*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JODY POHLMAN,

        Plaintiff-Appellant,

v

JAMES G. POHLMAN,

        Defendant-Appellee.

UNPUBLISHED
January 30, 2020

No. 344121
Oakland Circuit Court
LC No. 2017-853588-DO

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals as of right the judgment of divorce and the order denying her motion for reconsideration of the judgment of divorce, entered the same day. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The parties were married in 1989, and separated in March 2016. After plaintiff filed a complaint for divorce,[1] the parties agreed to participate in mediation. Mediation took place on January 31, 2018, and lasted from approximately 1:00 p.m. to 7:30 p.m. A "shuttle-type" of mediation was used, meaning the parties were separated for the entire duration of the mediation, and had no interaction. At the conclusion of mediation, both parties signed a settlement terms sheet, and initialed every handwritten change. It provided, "The terms set forth herein resolve all of the issues in this divorce case. There will not be a trial."

Defendant then filed a motion for entry of a judgment of divorce incorporating the terms of the signed settlement terms sheet. Plaintiff filed an answer[2] to the motion, arguing that the

---

[1] Plaintiff originally filed a complaint for divorce in a different lower court case, Docket No. 16-841561-DO, which was dismissed on May 24, 2017. Plaintiff refiled the complaint for divorce the next day.

[2] Plaintiff attached no exhibits to her answer.

settlement terms sheet was not binding because she did not make a knowing and understanding acquiescence to it. Specifically, but without any evidentiary support, plaintiff alleged only that she suffered from a "mental vulnerability and affliction," and thus could not knowingly enter into the agreement. Because there was no transcribed record of the mediation, there was no evidence demonstrating the parties' ability to understand the agreement, and plaintiff requested an evidentiary hearing. Plaintiff made no mention of domestic violence, or the lack of screening for it, in her answer or at the hearing.[3]

The court held a hearing on defendant's motion, and determined that plaintiff willingly participated in mediation, and entered the settlement without duress. The court based its decisions on the following grounds: (1) the fact that mediation lasted from 1:00 p.m. to 7:30 p.m. was not unusual, (2) the parties were each represented by counsel, (3) the mediator was experienced, (4) the mediator conducted shuttle-type mediation where the parties were separated the entire time, and (5) plaintiff signed the settlement terms sheet and initialed the handwritten changes to the document, each of which favored plaintiff. There was no evidence that defendant coerced or pressured plaintiff in any way, or took any unlawful actions, and there was no evidence that plaintiff signed the settlement terms sheet under duress. As a result, the court held that the agreement was enforceable. Defendant then testified as to the statutory grounds needed for entry of judgment of divorce, and the court granted defendant's motion.

Plaintiff filed a motion for reconsideration of the court's ruling, asserting that she suffered from duress and coercion during mediation.[4] Plaintiff alleged that her attorney and the mediator would not let her leave until she signed the settlement terms sheet, despite her requests to leave, and to have her co-counsel review the document. She also filed an objection to the seven-day order for entry of the judgment of divorce filed by defendant, alleging that mediation, and therefore the settlement terms sheet, were invalid because the parties did not undergo proper domestic violence screening under MCR 3.216(H)(2).[5] In a written opinion and order, the court denied plaintiff's motion for reconsideration, and entered the judgment of divorce incorporating the settlement terms sheet.

II. ANALYSIS

A. FAILURE TO COMPLY WITH MCR 3.216(H)(2)

---

[3] Plaintiff had previously filed a motion to hold defendant in contempt, but nothing in that motion mentioned domestic violence or any similar issue.

[4] Attached as exhibits to plaintiff's motion for reconsideration were a report from her therapist, plaintiff's affidavit regarding coercion by her attorney and the mediator, results of a polygraph examination, and the curriculum vitae of the polygraph examiner.

[5] Attached as exhibits to plaintiff's objection were documents related to domestic violence screening, and her affidavit regarding the lack of screening at mediation.

Plaintiff first argues that the mediation process was "fatally flawed" because the mediator failed to conduct any domestic violence screening.[6]

Though plaintiff has essentially ignored the context in which this issue was raised, we cannot. As noted earlier, plaintiff's affidavit regarding domestic violence and the lack of screening at mediation was first submitted to the court with her objection to the judgment served pursuant to the "seven-day rule" contained within MCR 2.602(B)(3). But those objections can only address whether the content of the proposed order is consistent with the court's ruling, i.e., the form of the order, and is not an independent means to challenge the underlying ruling. *Riley v 36th District Court*, 194 Mich App 649, 650-651; 487 NW2d 855 (1992). As a result, the affidavit regarding domestic violence was not properly presented to the trial court. The issue could have—but was not—raised with the motion for reconsideration, but that motion was focused on the alleged coercion by plaintiff's attorney and the mediator. Plaintiff's affidavit regarding domestic violence was not attached to that motion.

Even if this was a proper way to raise this issue, as a matter of law the violation of the court rule alone was not enough to set aside the judgment. Like the interpretation of statutes, the interpretation of court rules is reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011). Court rules are interpreted using the same principles as with statutory interpretation. *Id*. "Our goal when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text. If the text is unambiguous, we apply the language as written without construction or interpretation." *Id*. The trial court's factual findings underlying its application of a court rule are reviewed for clear error. *Vittiglio v Vittiglio*, 297 Mich App 391, 398; 824 NW2d 591 (2012). A trial court's decision regarding a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014).

MCR 3.216 governs mediation in domestic relations matters. MCR 3.216(H)(2) provides:

> The mediator must make reasonable inquiry as to whether either party has a history of a coercive or violent relationship with the other party. Throughout the mediation process, the mediator must make reasonable efforts to screen for the presence of coercion or violence that would make mediation physically or emotionally unsafe for any participant or that would impede achieving a voluntary and safe resolution of issues. A reasonable inquiry includes the use of the domestic violence screening protocol for mediators provided by the state court administrative office as directed by the supreme court.

This subsection was added in September 2017, to "update the rule to be consistent with 2016 PA 93, which allows a court to order mediation if a protected party requests it and requires a

---

[6] Defendant did not file a brief on appeal.

mediator to screen for the presence of domestic violence throughout the process." MCR 3.216 (staff comment to 2017 amendment).[7] "Must" is defined as "an imperative need or duty: REQUIREMENT." *Merriam-Webster's Collegiate Dictionary* (11th ed). Under the plain and unambiguous language of MCR 3.216(H)(2), a mediator is required to make a reasonable inquiry regarding a coercive or violent relationship between the parties, and is required to make reasonable efforts to screen for coercion or violence between the parties throughout the mediation process.[8]

Plaintiff attested[9] that the mediator never inquired about any history of domestic violence between the parties, nor did he complete any domestic violence screening. Plaintiff only briefly spoke to the mediator directly at the beginning of mediation when he made introductory remarks, and he did not return to the conference room where plaintiff was located until around 7:00 p.m. Although plaintiff never came forward before or during mediation with any suggestion of the existence of domestic violence in the parties' relationship, it is clear that the mediator did not comply with the requirements of MCR 3.216(H)(2) when he failed to inquire or make reasonable efforts to screen the parties regarding any history of domestic violence or coercion during their relationship.

However, plaintiff fails to provide any authority for the proposition that the mediator's failure to comply with the requirements of the court rule renders the mediation and subsequent settlement terms agreement void. "A party may not simply announce its position and 'leave it to this Court to discover and rationalize the basis for the party's claim.'" *Badiee v Brighton Area Schs*, 265 Mich App 343, 357; 695 NW2d 521 (2005) (citation omitted). And this is important, because "absent a showing of prejudice resulting from noncompliance with the [court] rules, any error is harmless." *Baker v DEC Int'l*, 218 Mich App 248, 262; 553 NW2d 667 (1996), aff'd in part and rev'd in part on other grounds by 458 Mich 247 (1998) (rule set forth in context of

---

[7] 2016 PA 93 was codified at MCL 600.1035. Although defendant neither cites to or relies upon this statute, it provides in relevant part:

> (2) In a domestic relations mediation, the mediator shall make reasonable inquiry as to whether either party has a history of a coercive or violent relationship with the other party. A reasonable inquiry includes the use of the domestic violence screening protocol for mediation provided by the state court administrative office as directed by the supreme court.
>
> (3) A mediator shall make reasonable efforts throughout the domestic relations mediation process to screen for the presence of coercion or violence that would make mediation physically or emotionally unsafe for any participant, or that would impede the achievement of a voluntary and safe resolution of issues.

[8] The rule does not address pressure to settle that a party feels from her counsel or the mediator.

[9] As noted earlier, plaintiff's affidavit regarding domestic violence and the lack of screening at mediation was submitted with her objection to the judgment served pursuant to MCR 2.602(B)(3).

-4-

affidavits violating court rules); MCR 2.613(A). Because plaintiff has not asserted or demonstrated that she was prejudiced by the mediator's failure to screen for domestic violence during mediation, any noncompliance with MCR 3.216(H)(2) was harmless. See *Castillo v Alexander*, 171 Mich App 679, 682; 430 NW2d 751 (1988) (where the mediation clerk violated the court rule by notifying the parties of their acceptance of the mediation award before the expiration of the response period, "this notification, if error, is harmless because it did not affect the parties' decision to either accept or reject the mediation award.").

## B. THE SETTLEMENT TERMS SHEET WAS NOT VOID BECAUSE OF DURESS

Plaintiff next argues that the settlement terms sheet signed at mediation was void because it was made under duress, and plaintiff did not reasonably understand the settlement terms sheet.[10] Plaintiff raised this issue of duress, based primarily on her "mental vulnerability and affliction," in her opposition to defendant's motion for entry of judgment.

"The finding of the trial court concerning the validity of the parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion," which occurs when the court chooses an outcome that falls outside the range of principled outcomes. *Rettig v Rettig*, 322 Mich App 750, 754; 912 NW2d 877 (2018) (quotation marks and citations omitted).

For the most part, parties cannot disavow a written, signed agreement. *Gojcaj v Moser*, 140 Mich App 828, 835; 366 NW2d 54 (1985).[11] MCR 3.216(A)(2) provides that "[d]omestic relations mediation is a nonbinding process . . . ." To make a settlement binding, MCR 3.216(H)(8) provides that "[i]f a settlement is reached as a result of . . . mediation, to be binding, the terms of that settlement must be reduced to a signed writing by the parties or acknowledged by the parties on an audio or video recording. After a settlement has been reached, the parties shall take steps necessary to enter judgment as in the case of other settlements."

Once the parties reach a settlement agreement, it should not be set aside merely because one party had a "change of heart." *Vittiglio*, 297 Mich App at 399 (quotation marks and citation omitted). " 'It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged.' " *Id*. at 400, quoting *Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990). "This rule applies whether the settlement is in writing and signed by the parties or their representatives or the settlement is orally placed on the record and consented to by the parties, even though not yet

---

[10] In her motion for reconsideration, plaintiff also argued that she signed the settlement terms sheet under duress because she was tired and hungry during the 6.5 hour process, and she was pressured by the mediator and her attorney to sign the settlement. Nothing in the record suggests that plaintiff was placed under duress by defendant, or that she did not understand the terms when she agreed to them, a point we address later in this opinion.

formally entered as part of the divorce judgment by the lower court." *Keyser*, 182 Mich App at 270. "However, the parties must have actually consented to the settlement agreement." *Vittiglio*, 297 Mich App at 400.

However, contracts may be voided on grounds of duress. *Rory v Continental Ins Co*, 473 Mich 457, 489; 703 NW2d 23 (2005). To succeed with respect to a claim of duress, the plaintiff must establish that she was illegally compelled or coerced to act by fear of serious injury to her person, reputation, or fortune. *Farm Credit Servs of Mich Heartland, PCA v Weldon*, 232 Mich App 662, 681; 591 NW2d 438 (1999).

In *Vittiglio*, the plaintiff attested that the defendant threatened to kill her more than once in the past. *Id.* at 400-401. However, like this case, the settlement agreement in *Vittiglio* was reached through mediation using " 'shuttle diplomacy,' " where the parties were not in the same room. *Id.* at 401. Similarly, the plaintiff in *Vittiglio* never claimed that the defendant threatened her into agreeing to the settlement. *Id.* *Vittiglio* was decided before MCR 3.216 was amended in September 2017, to add subsection (H)(2), and the Court noted as follows:

> The Supreme Court Administrative Office (SCAO)'s Standards of Conduct for Mediators do not specify any particular manner for handling mediation when domestic violence or control exists. However, the SCAO's Model Screening Protocol for domestic-relations mediation when domestic violence or control exists contains a number of suggestions for keeping parties safe, accommodated, and capable of negotiating and making decisions free from fear or coercion. It appears that the mediator took proper care to ensure that the mediation was free from coercion. [*Id.* at 401 n 3 (citation omitted).]

Therefore, the *Vittiglio* Court concluded that the defendant's previous threats to the plaintiff did not affect the validity of the plaintiff's consent to the settlement agreement, "particularly because of the method of mediation used in this case." *Id.* at 401.

Plaintiff's allegations that she was not allowed to leave, and was pressured to sign the settlement terms agreement by her attorney and the mediator, do not demonstrate the coercion necessary to set aside an agreement based upon duress. Before addressing plaintiff's argument, we point out two principles.

First, when a party asserts that her own attorney coerced or unduly influenced her, courts will not overturn a consent judgment absent a showing that the opposing party participated in the coercion or influence. *Id.* at 401-402. In *Vittiglio*, where shuttle-type mediation was also used, there was no indication that the defendant was involved in any communication with the plaintiff regarding any advantage of settling the case, so there was no basis to disturb the trial court's findings that the plaintiff, an educated person, was represented by experienced counsel before an experienced mediator, and there was no duress. *Id.* at 402. Second,

> a certain amount of pressure to settle is fundamentally inherent in the mediation process, and is practically part of the definition. See MCR 3.216(A)(2) ("Domestic relations mediation is a nonbinding process in which a neutral third party facilitates communication between parties to promote settlement."). That pressure to settle is not, by itself, coercion. [*Id.*]

-6-

Based on undisputed facts, the trial court correctly found that (1) plaintiff voluntarily participated in mediation, (2) the 6.5 hour time period was not unusual for a divorce mediation, (3) the parties had an experienced mediator and counsel, (4) the mediator conducted shuttle-type mediation, and (5) plaintiff signed and initialed the settlement terms sheet. These findings are based on the undisputed facts that during the entire mediation the parties were in separate rooms, and had no interaction. At no time did plaintiff assert that defendant coerced her into signing the settlement terms sheet at mediation. Instead, plaintiff asserted that her attorney and the mediator made her feel as if she could not leave without signing. But as noted in *Vittiglio*, that is not sufficient. *Id*. at 401-402.

The dissent recognizes "that the behaviors of the mediator and counsel do not necessarily provide [plaintiff] with grounds to disavow the settlement agreement." But of course, the sole basis for plaintiff's argument in opposition to defendant's motion for entry of judgment, as well as in her motion for reconsideration, was precisely the alleged behavior of her counsel and the mediator. Likely recognizing this fact, and in defiance of two orders of this Court, the dissent relies upon an affidavit from defendant that was not submitted to the trial court, and that was specifically not made part of the record on appeal.[12] Although the dissent and plaintiff (*at least on appeal*) paint a compelling picture, their canvas starts off blank, ignoring the procedural posture in which these issues are presented to us. Our limited role as appellate judges requires us to recognize, and be guided by, the standards of review and appellate principles that apply in all cases. Those include limiting ourselves to reviewing evidence of record, and considering when the evidence was presented to the trial court. How and if issues are raised in the trial court often controls the outcome of an appeal, and when enforcing those rules here, the conclusion must be to affirm.[13]

---

[12] See *Pohlman v Pohlman*, unpublished order of the Court of Appeals, issued November 20, 2019 (Docket No. 344121) (GLEICHER, J., *dissenting*), and *Pohlman v Pohlman*, unpublished order of the Court of Appeals, issued July 17, 2019 (Docket No. 344121) (JANSEN, J., *dissenting*). Mr. Pohlman's affidavit was signed almost a year after the judgment of divorce was entered, and was obviously never presented to the trial court.

[13] The dissent's statement that appellate courts "frequently grant motions to expand the record in cases similar to this one" is not, in our view, accurate. For one, the overriding appellate rule is that we must confine ourselves to the record presented to the trial court, and "[e]nlargement of the record on appeal is generally not permitted." *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990). That general rule is infrequently disregarded, and expansions of the record are granted in limited cases, for example, to address evidence that was referred to in the trial court, but was not made a part of the lower court record. Defendant's affidavit is nothing of the sort, and would simply inject new facts into the record that were unknown to the trial court and trial counsel. Additionally, the orders cited by the dissent say nothing about motions to expand the appellate record, and in any event contain no rulings (instead both simply remand for trial court hearings) that would be precedential. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

Plaintiff's argument that defendant coerced plaintiff into signing the settlement terms sheet by being uncooperative throughout discovery is unpersuasive because what occurred during discovery has no impact on what pressure was placed on plaintiff at mediation. It would be one thing if plaintiff was alleging the failure to disclose assets during discovery, or that she mistakenly agreed to mediate, but neither is the case. While at mediation, both parties were aware of what transpired during discovery in this case and the prior divorce proceedings, and were free to consider that in deciding whether to resolve the matter. If failure to comply with discovery was a legal basis to establish duress and set aside a settlement reached at mediation, the mediation process would be rendered virtually useless. Therefore, because there is no evidence that plaintiff signed the agreement under duress contributed to by defendant, the court did not abuse its discretion by denying plaintiff's motion for reconsideration and entering the judgment of divorce.

In a related argument, plaintiff also argues that her ability to consent to the settlement terms sheet was impaired by severe stress. "[T]he test for whether consent was illusory because of severe stress is that of mental capacity to contract." *Vittiglio*, 297 Mich App at 403. "That is, whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he [or she] is engaged." *Id.* (citation and quotation marks omitted). The plaintiff in *Vittiglio* would have to have "show[n] that she did not even comprehend the nature or terms of the agreement," *id.*, but failed to do so because the mediator asked the plaintiff if she understood the terms, the plaintiff said that she did, had no questions, and agreed to the settlement. *Id.* Similarly, here, plaintiff's consent to the settlement terms sheet cannot be invalidated on the basis of her "unreasonable stress." Plaintiff asserts that she did not read or understand the settlement terms sheet; however, she signed the document, and initialed each handwritten change, each of which, according to the trial court, resulted in her favor. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its content. Moreover, mere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (quotation marks and citations omitted). Plaintiff failed to overcome the presumption that she could comprehend the settlement terms sheet. *Vittiglio*, 297 Mich App at 403.

## C. FAILURE TO HOLD AN EVIDENTIARY HEARING

Lastly, plaintiff argues that the trial court erred in failing to grant her an evidentiary hearing to determine if the settlement was void because of coercion and duress, and whether the requirements of MCR 3.216(H)(2) were met.

Plaintiff requested an evidentiary hearing to prove that she signed the settlement terms agreement under coercion and duress. A trial court may abuse its discretion when a party alleges fraud in a consent judgment, and the court fails to hold an evidentiary hearing. See *Kiefer v Kiefer*, 212 Mich App 176, 183; 536 NW2d 873 (1995). But the trial court does not have to hold an evidentiary hearing when it can sufficiently decide an issue on the basis of the evidence before it. *Vittiglio*, 297 Mich App at 406. "[W]here the party requesting relief fails to provide specific allegations of fraud relating to a material fact, the trial court need not proceed to an evidentiary hearing." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 405; 651 NW2d 756 (2002).

As discussed above, plaintiff's allegations of duress and coercion related to signing the settlement terms sheet were based on pressure that she felt from the mediator and her attorney, rather than defendant. This was clear in her affidavit regarding the alleged coercion that occurred at mediation. Thus, the trial court was not required to hold an evidentiary hearing because it could sufficiently decide the issue of coercion and duress on the basis of the evidence before it. *Vittiglio*, 297 Mich App at 406. Plaintiff's affidavit, filed with her motion for reconsideration, was considered in light of what was acknowledged at the hearing held on March 14, 2018, i.e., that the evidence was undisputed that there was no evidence that defendant coerced or pressured plaintiff into signing the settlement terms sheet because shuttle-type mediation was used, the parties did not interact, they were each represented by counsel, and an experienced mediator was used. In light of these undisputed facts, the court properly considered plaintiff's affidavit against these facts to determine without an evidentiary hearing whether duress was shown. *Vittiglio*, 297 Mich App at 406. Therefore, the trial court did not abuse its discretion by failing to hold an evidentiary hearing. *Kiefer*, 212 Mich App at 183.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer