No. 57,210

DEAN DOWLING and LOUISE DOWLING, *Appellants,* v. SOUTHWESTERN PORCELAIN, INC., *Appellee.*

(701 P.2d 954)

Opinion filed June 21, 1985.

*Robert M. Baker,* of Baker and Woolwine, Chartered, of Ashland, argued the cause and was on the brief for appellant.

*Shelden Le Bron,* of Gehrt & Roberts, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an action by Dean Dowling and Louise Dowling, plaintiffs, against Southwestern Porcelain, Inc., for damages alleged to have resulted from the defendant's manufacture, sale and installation of a defective silo. Plaintiffs appeal from the order and judgment of the district court sustaining defendant's motion for a summary judgment, and from other rulings of the trial court. For convenience we will refer to the plaintiffs as Dowling and the defendant as SPI.

Defendant Southwestern Porcelain, Inc., (SPI) is a corporation which manufactures "Sealstor" silos, which are designed for storage of high-moisture grain. On April 27, 1978, SPI entered into an informal agreement, reflected by a letter, with William Tracy and Thomas Lewis of Dodge City, Kansas. Briefly, the letter requires Tracy and Lewis to establish a Kansas corporation to "represent us exclusively" in the sale of Sealstor silos in certain areas of western Kansas and eastern Colorado. The letter continued that "Sealstor [SPI] will assist you in setting up and in training your erection and service people . . .," and will provide a full sales manual and sample literature, and certain regional advertising. This document is the only writing reflecting any agreement between SPI and Tracy, Lewis and Mid-Plains Sealstor, prior to August 1, 1978.

Mid-Plains Sealstor, Inc., was organized and incorporated in

Kansas on the 9th day of June, 1978. On August 1, 1978, Dowling placed an order with Mid-Plains for the Sealstor silo in issue. The agreed price was $49,440. Dowling paid ten percent of that price to Mid-Plains when the order was signed. On the following day Mid-Plains ordered the Sealstor silo from SPI. On September 21, 1978, the silo was shipped directly by SPI to the plaintiffs; shipping charges were paid by Mid-Plains. On November 28, installation of the silo was completed, and Dowling paid the balance due Mid-Plains and signed a completion certificate. On April 5, 1979, SPI wrote a letter to Tracy and Mid-Plains. This set forth a slightly different contract between SPI and Mid-Plains. It said nothing about the training of erection and service employees. In 1980, Mid-Plains took bankruptcy, and on October 22 of that year filed its dissolution with the Secretary of State.

In 1978, Dowling put a little grain in the silo. He emptied it within sixty days, perhaps in January or February of 1979. The weather was cold and there was no spoilage. In the fall of 1979, the silo was filled to within three or four feet of the top. In late June or early July 1980, Dowling discovered that the grain was not keeping well. He sold 3500 bushels to a dairy farmer, removed the rest, and sold it to a feed lot. Though no damage was sustained, Dowling was aware that he had a problem and that the grain was not keeping properly in the silo.

By this time, Mid-Plains Sealstor was out of business. Dowling called the SPI home office in Oklahoma and explained his problems with the silo. Mr. Boyle, SPI's president, said that K & M Silo, out of Topeka, would take care of it. A representative of K & M examined the silo, made repairs, tested it for leaks, and told Dowling it was ready for use. In September 1980, Dowling filled the silo again. He fed approximately half of the grain, and in June 1981, he discovered that the remaining 14,000 bushels had spoiled. It would not auger out but had to be scooped. He realized approximately 50% loss of value of the grain. On October 25, 1982, he filed this lawsuit.

The petition alleged that the silo was sold and delivered to the plaintiffs by defendant's salesman; that the silo has not and will not perform as advertised; and that it is unfit for the purpose intended. It alleged that the defendant had attempted to repair the silo but its efforts were futile. Plaintiffs sought damages of

more than $10,000. The petition was primarily couched in terms suggesting breach of implied warranty of fitness.

SPI answered, admitting that the plaintiffs purchased the silo but alleging that it was delivered by an independent contractor, Mid-Plains Sealstor, managed by Bill Tracy. It denied that the silo has not or will not perform as advertised, and denied that the silo is unfit for the purpose intended. Defendant admitted that it had attempted to repair the silo through the efforts of Kansas-Missouri Silo Company, but alleged that Dowling refused to allow the repairs to be made and prevented the defendant from making any needed repairs. Defendant contended that the action was barred by the statute of limitations and denied that there were defects in the silo. It alleged in the alternative that any defects were a result of the negligence of the plaintiffs or Mid-Plains Sealstor and Bill Tracy, its manager. Defendant alleged that the doctrine of comparative negligence should be applied and claimed that the negligence of the plaintiffs or Bill Tracy and Mid-Plains Sealstor would either reduce or bar completely plaintiffs' claim for relief in this case.

The defendant submitted interrogatories to the plaintiffs, seeking to discover any claims of causal negligence upon which plaintiffs intended to rely, as well as the specifics of the claims of breach of implied warranty, and any other theory of recovery which plaintiffs asserted. To each of these interrogatories, Dowling replied that the interrogatories could not be answered at this time but that, following full and final discovery, all acts of negligence and breaches of implied warranty upon which the plaintiffs rely would be set forth in the pretrial order.

Prior to pretrial, plaintiffs completed and filed a pretrial questionnaire in which they set forth the theory of their claim, including grounds of negligence, as follows:

"a. Improper training of:
   (1) Defendant's product erector, including his lack of supervision in the installation and testing of the silo structure.
   (2) Purchaser of product.
"b. Failure to require erector to have proper tools for the erection and testing of the silo.
"c. Failure to require erector to test finished silo for air leaks.
"d. Failure to provide proper parts for silo.
"e. Installation of defective unloader mechanism.
"f. Failure to test unloader mechanism.
"g. Failure to warn a purchaser what would happen if an air bag were damaged in filling of the [structure].

"h. Failure to warn a purchaser what would happen if air got into the structure from any source.

"i. Failure to warn a purchaser in regards to the sealing and maintenance of the unloading mechanism.

"j. Providing a defective product without intervening acts of negligence on part of purchaser.

"k. Failing to test an unloader supplied by a supplier before installing same on plaintiffs' silo.

"l. Installing a defective unloading mechanism."

Defendant filed a formal objection to the inclusion of grounds of negligence, and plaintiffs filed a motion for leave to amend the petition to set forth all of those grounds of negligence included in their pretrial questionnaire. The defendant objected to the proposed amendment. The trial court denied the plaintiffs' motion to amend and ruled that the plaintiffs' right of recovery would be based only upon breach of implied warranty.

Thereafter, the defendant filed a motion for summary judgment on the grounds that the undisputed record shows that plaintiffs' cause of action is barred by the applicable statute of limitations, K.S.A. 84-2-725, and because the plaintiff failed to give notice to the seller as required by K.S.A. 84-2-607(3). Defendant relied upon various documents in the record, including an affidavit of the president of SPI, submitted with the motion, which stated that neither Mid-Plains nor Bill Tracy was ever an agent or an employee of SPI.

Plaintiffs responded, arguing that the affidavit of nonagency should not be relied upon by the court, but the issue of agency should be determined by the trier of facts; that the lawsuit was filed within time; and that notice was given within a reasonable time.

The trial court found that neither Tracy nor Mid-Plains was ever an agent or an employee of SPI; that the four-year statute of limitations had run at the time the action was filed; and that the defendant was entitled to summary judgment as a matter of law. Plaintiff appeals.

The first issue is whether the trial court erred in refusing to permit plaintiffs to rely upon the negligence theory. The petition alleged that the silo has not and will not perform as advertised and that it is unfit for the purpose intended. These claims are in the nature of breach of implied warranty. However, the petition also claimed that the defendant attempted to repair the silo so

that it would perform as advertised, but failed to do so. This statement in the petition would appear to be an attempt to rely upon negligence.

Both parties rely upon the case of *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 681 P.2d 630 (1984). There the trial court granted summary judgment in favor of the defendant, ruling that the plaintiff's petition was based on breach of express warranty and that the plaintiff could not rely on the theory of implied warranty or negligence. After stating the general principles applicable to the pleadings and theories of recovery, we reversed the judgment, holding that the *Oller* petition was sufficient to raise the issues of implied warranty and negligence.

In *Oller*, the petition made specific references to acts of negligence, and it used language that clearly reflected claims based upon implied warranty. The petition now before us makes only the one slight reference to negligence during attempted repair. We note that negligent repair is not one of the grounds of negligence asserted in the pretrial questionnaire and thus is not one of the grounds of negligence upon which the plaintiffs now seek to rely. We also note that the answer in this case denies the allegations of fault set forth in the petition and alleges that the doctrine of comparative negligence should be applied.

Defendant served plaintiffs with interrogatories, asking details as to the grounds of negligence or breach of warranty upon which plaintiffs intended to rely. Plaintiffs responded only that they would disclose the grounds of negligence or the facts forming the basis of breach of warranty at the time of pretrial. It is readily apparent even from a cursory reading of the facts enumerated in plaintiffs' pretrial questionnaire that most, if not all, of the claims of negligence or breach of warranty were known or should have been known to the plaintiffs several years prior to the time the answers to the interrogatories were supplied. As we noted in *Oller*, interrogatories can be most helpful in narrowing and sharpening the issues, an important part of the discovery process. *Oller*, Syl. ¶ 3. Plaintiffs' responses to the interrogatories appear to have been made under the old theory of keeping the opponent in the dark as long as possible. Full, frank and complete answers to the questions should have been supplied. Nevertheless, based upon the facts outlined above and applying the rules set forth in *Oller*, a majority of the members of this court conclude that the

trial court should have permitted the plaintiff to rely upon the negligence theory.

That, however, does not require a reversal. Claims for negligence are controlled by the two-year statute of limitations, K.S.A. 60-513(a)(4), with the exception that causes of action are not deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, K.S.A. 60-513(b). That subsection reads as follows:

"Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Subsection (c) applies to claims arising out of services of a health care provider and is inapplicable here. The issue here is, when did the fact of injury become reasonably ascertainable to Dowling? And was this litigation commenced within two years of that time?

At least by July 1980, Dowling was aware that the silo was not operating properly, and that grain stored in it was spoiling. He called the SPI home office, and as a result of that call a man came out and made an inspection and made certain repairs on the silo. In September 1980, Dowling filled the silo again. This time the spoilage resulted in an extensive loss. We conclude that it is undisputed from the record that Dowling discovered the problem with the silo and was made aware of his injury in July 1980. The injury (an expensive silo that did not preserve its contents) was then reasonably ascertainable. His call to the home office of SPI clearly indicates his awareness of injury. Since the lawsuit was not filed for more than two years after the discovery of the fact of injury, Dowling's claims for negligence are barred by the statute of limitations.

The next issue is, when did the statute of limitations commence to run on Dowling's claims for breach of implied warranty? The silo was delivered in September 1978. Erection of the silo was not completed until November 28, 1978. This action was filed on October 25, 1982, within four years of the latter date.

K.S.A. 84-2-725 establishes a four-year limitation period. It states in pertinent part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Plaintiff contends that the four-year period did not begin to run until erection of the equipment was completed; defendant contends that the statute commenced to run upon the date of delivery. The statute provides that a breach of warranty occurs when tender of delivery is made. We dealt with that portion of the statute in *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975). Syllabus ¶ 5 states the general rule as follows:

"An action for damages for breach of warranty in the sale of equipment is governed by the four-year statute of limitations of the Uniform Commercial Code (K.S.A. 84-2-725) and the cause of action accrues when the installation of the equipment is completed."

On page 221 of the opinion we said:

"Having determined that Article 2 of the U.C.C. applies to the present transaction, we are left with the question of whether suit was brought within four years after the cause of action accrued. Subsection (2) provides that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Furthermore, the subsection provides that a breach of warranty occurs when 'tender of delivery' is made, with the exception that if the warranty explicitly extends to future performance of the goods the cause of action accrues when the breach is or should have been discovered.

"Under the facts and circumstances of this case we conclude that tender of delivery of the accounting machine, sold to Atlas by NCR and installed by NCR in Atlas' plant, did not occur until installation of the machine was completed. Scott testified it took approximately six months to complete the installation. By his own admission, '[i]t was in March or April of 1968 before the machine was completely installed and operational.' The record shows Atlas instituted the present action on October 19, 1971, within four years of the date of installation. This result is consistent with the intent of 2-725 and recent cases considering this issue. (*Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850 [6th Cir. 1969].)"

Dowling makes no argument that the warranty explicitly ex-

tends to future performance and we need not discuss that provision of the statute. In the *Atlas* case, NCR sold, delivered and installed the unit. Defendant in this case makes much of the fact that the unit was sold by Mid-Plains, an independent corporation serving as a dealer or franchisee; that while SPI manufactured and shipped the unit to Dowling, Mid-Plains was directly in charge of the installation and SPI contends that it had nothing to do with that process. The initial letter from SPI to Tracy and Lewis, dated April 27, 1978, provides that "Sealstor will assist you in setting up and in training your erection and service people if your advance scheduling permits."

The letter also provided for the need for specialized equipment and vehicles to be used in the erection and servicing procedures. The second letter describes Mid-Plains as being a Sealstor dealership.

There is evidence that Dowling purchased a package deal—he did not purchase the raw equipment, separate from the installation; he contracted for a finished silo.

Defendant relies upon the exception to the rule found in the case of *Binkley Company v. Teledyne Mid-America Corporation*, 333 F.Supp. 1183 (E.D. Mo. 1971), *aff'd* 460 F.2d 276 (8th Cir. 1972). In that case Binkley purchased a welder from Teledyne. The welder was delivered on September 7, 1966. Binkley was to do its own installation. It was not able to install the welder until late the following month. Its action for breach of warranty was not filed until September 14, 1970, more than four years after delivery. The trial court concluded that the tender of delivery occurred within the meaning of Missouri U.C.C. section 2-725 when the equipment was received at Binkley's plant, since Teledyne had no responsibility for installation or set-up of the equipment.

It may very well be reasonable under some circumstances to hold that tender of delivery is complete within the meaning of the statute when equipment is delivered, since that is normally the last contact that the seller has if the seller is not going to participate in the installation of the equipment. In the case before us, however, the unit was sold by defendant's dealer. As reflected in the letters, the dealer was commencing business in territory in which a competitor was already entrenched. SPI had an interest not only in the quality of the merchandise it supplied

but also in the installation, erection and operation of the completed unit. Unless the units were properly installed, they could not be expected to operate properly and SPI could not reasonably expect the business to continue and grow. The provision in the dealership agreement for the purchase of expensive erection equipment and vehicles from SPI, and the provision for the training of erection and service people, indicates SPI's interest and, to a certain extent, control. Also, the purchaser would have no way of testing the silo or of determining whether or not it was proper and acceptable until the contract for installation was complete. For these reasons, we conclude that the *Atlas Industries* rule controls and that the statute of limitations in this case did not commence to run until installation was completed on November 28, 1978. Therefore, the action for breach of warranty filed on October 25, 1982, was timely.

We next turn to the notice issue. K.S.A. 84-2-607(3)(a) requires the buyer, within a reasonable time after he discovers the breach, to notify the seller of the breach. Plaintiffs did not plead notice, and the lack of notice was not raised by answer. The trial court sustained the motion for summary judgment on the grounds that plaintiffs' claim was barred by the statute of limitations and thus it did not reach the notice issue.

However, since this issue has now been raised and in all likelihood will be raised in the future, we deem it appropriate to comment thereon. As we noted in *Dold v. Sherow,* 220 Kan. 350, 352, 552 P.2d 945 (1976), the requirement of notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy. As we have held earlier in this opinion, Dowling was aware of the defects and his injury when he discovered the spoilage of grain in July 1980. Shortly thereafter, he notified SPI's president of the problem. Notice under 84-2-607(3)(a) may be oral. If the parties wish to amend their pleadings to reflect the giving of notice and perhaps to dispute the receipt of that notice, the trial court may make appropriate orders as required.

One further issue remains and that is the issue of agency. Upon the basis of the affidavit of defendant's president, the trial court ruled that neither Bill Tracy nor Mid-Plains was ever the agent of the defendant. The determination of what constitutes agency and whether there is any competent evidence reasonably tending to

prove its existence are questions of law, *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 2, 548 P.2d 719 (1976).

The documentary evidence here disclosed that Mid-Plains was the exclusive representative of SPI in the western half of Kansas and parts of eastern Colorado for the purpose of selling and erecting Sealstor silos. This includes the county where this silo was sold and erected. The April 27, 1978, letter states: "You have proposed and we have accepted for the present that *you represent us exclusively* to the agricultural market," in certain areas of Kansas and Colorado. (Emphasis supplied.) The April 5, 1979, letter echoes the same thought: "We have proposed and you have agreed that *you will represent us exclusively* to the agricultural market," in the western half of Kansas and certain counties in Colorado. (Emphasis supplied.) Even though some years later the president of SPI states in his affidavit that "Bill Tracey [*sic*] or Mid-Plains Sealstor was never an agent or employee of Southwestern Porcelain, Inc.," the earlier contract documents speak for themselves. We are in as good a position to interpret those documents as was the trial court. Upon our examination of them, and under the facts of this case, we conclude that Mid-Plains Sealstor, Inc., was the representative and agent of the defendant for the purpose of sales and erection of Sealstor silos. The trial court erred in its finding and conclusion to the contrary.

The judgment is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion.