## BAKER v DEC INTERNATIONAL

Docket No. 107656. Argued April 7, 1998 (Calendar No. 6). Decided July 21, 1998.

Gerald M. and Eleanor S. Baker brought an action in the Ingham Circuit Court against DEC International and Tri County Dairy Equipment, Inc., alleging breach of warranty under the Uniform Commercial Code of a milking system and damage of their dairy operation. The court, Carolyn Stell, J., granted the defendants' motion for summary disposition on the ground that the four-year period of limitation had run, and, thus, that the suit was time barred. The Court of Appeals, MURPHY, P.J., and O'CONNELL and M. J. MATUZAK, JJ., reversed and remanded, holding that tender of delivery of the milking system had not occurred until its installation was complete and that a genuine issue of fact existed regarding when installation was complete (Docket No. 178000). DEC International appeals.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, CAVANAGH, and KELLY, the Supreme Court *held*:

Where a seller is obligated to install goods under a contract, tender of delivery does not occur until installation is completed. Tender of delivery is not contingent on inspection or testing in the absence of a clear contractual obligation to the contrary. Because there are genuine issues of material fact regarding whether the installation at issue was a material term of the contract and when the installation of the milking system actually took place, summary disposition in favor of defendants must be reversed, and the case remanded to the trial court for further proceedings.

1. Under MCL 440.2503(1); MSA 19.2503(1), tender of delivery requires a seller to put and hold conforming goods at a buyer's disposition and give the buyer any notification reasonably necessary to enable the taking of delivery. Under § 2106(2), a good is conforming when it is in accordance with the obligations under the contract. Tender can mean an offer by the tendering party, coupled with a present ability to fulfill all conditions, followed by actual performance, or, if the context unmistakably indicates otherwise, an offer as if in fulfillment of contractual conditions, even though there is a defect when measured against the contract obligation. If installation is a term of the contract, then mere physical delivery

will not fulfill the defendant's contractual obligation. Only when the component parts are fully installed could the defendant be viewed as tendering goods as if in fulfillment of its contractual responsibilities.

2. Because there is a genuine issue of material fact regarding when the milking system was installed, the Court of Appeals was correct in reversing summary disposition in favor of Tri County. DEC had no contractual obligation to install the milking machine. Its agreement was to sell the machinery to Tri County, who in turn sold the goods to the Bakers. With respect to defendant Tri County, there is no clear indication that installation was a material term of the contract. Whether the contract between the parties embodied installation is a question properly determined by the trier of fact.

Affirmed in part and reversed in part.

Justice WEAVER, joined by Chief Justice MALLETT and Justice TAYLOR, concurring in part and dissenting in part, stated that installation of the goods is not a prerequisite to tender of delivery. In this case, tender of delivery was made when the component parts were delivered to the plaintiffs' farm.

Where a contract requires a seller both to provide goods and to install them, tender of delivery still occurs under MCL 440.2725; MSA 19.2725 upon tender of delivery of the component parts. Although the plaintiffs may not have discovered the defect at the time the statute of limitations began to run, the breach had occurred; § 2725 specifically provides that the aggrieved party's lack of knowledge of the breach is irrelevant. The limitation provision turns on tender of delivery, not on inspection or acceptance or rejection. The UCC will cease to be uniform if the Supreme Court departs from its plain language and creates a rule that the limitation period does not begin to run until a system is installed or licensed.

While there is case law supporting a rule with respect to sales of goods requiring installation, that tender of delivery does not occur until the goods are installed, it appears to rest on the rationale that the buyer cannot inspect or test the goods until they are installed, which is unpersuasive in the context of § 2725. Although there is lack of unanimity of result among sister courts, those cases holding that installation is not a prerequisite to delivery represent the better-reasoned line of cases.

218 Mich App 248; 553 NW2d 667 (1996) affirmed in part and reversed in part.

*Reber, Greer, Schuiteman, Stariha & Greer, P.C.* (by *Robert A. Stariha*), for plaintiffs-appellees.

*Bremer & Nelson, L.L.P.* (by *William M. Bremer* and *Phillip J. Nelson*), for defendant-appellee DEC International.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Brian D. Herrington*), for defendant-appellee Tri County Dairy Equipment, Inc.

BOYLE, J. We granted leave in this case to determine when the statute of limitations began to run on plaintiffs' implied warranty claims under the Uniform Commercial Code. A breach of warranty occurs, and thus the statute of limitations[1] begins to run, when tender of delivery is made.[2] We hold that where the seller is obligated to install goods under a contract, tender of delivery does not occur until installation is completed.[3] Furthermore, tender of delivery is not contingent on inspection or testing in the absence of a clear contractual obligation to the contrary.[4] There are genuine issues of material fact regarding whether installation was a material term of the contract and

---

[1] MCL 440.2725; MSA 19.2725.

[2] MCL 440.2503; MSA 19.2503.

[3] See 3 Foran, Williston on Sales (5th ed), § 25-55, p 716. See also *Shero v Home Show USA, Ltd,* 193 AD2d 1072; 598 NYS2d 408 (1993); *City of Willmar v Short-Elliott-Hendrickson, Inc,* 475 NW2d 73, 80-81 (Minn, 1991); *Dreier Co, Inc v Unitronix Corp,* 218 NJ Super 260, 270; 527 A2d 875 (1986); *Dowling v Southwestern Porcelain, Inc,* 237 Kan 536, 544; 701 P2d 954 (1985); *Unitron Graphics v Mergenthaler Linotype Co,* 75 AD2d 783; 428 NYS2d 243 (1980); *Triangle Underwriters, Inc v Honeywell, Inc,* 604 F2d 737 (CA 2, 1979); *Val Decker Packing Co v Corn Product Sales Co,* 411 F2d 850, 851 (CA 6, 1969).

[4] By placing "emphasis on the date of physical delivery rather than on the terms of the specific contract before it," the dissent's bright-line rule would reach "the perverse conclusion that the statute of limitations began to run before the breach occurred." *St Anne-Nackawic Pulp Co, Ltd v Research-Cottrell, Inc,* 788 F Supp 729, 736 (SD NY, 1992) (discussing the result reached in *Cincinnati, Ohio v Dorr-Oliver, Inc,* 659 F Supp 259 [D Conn, 1986]).

when installation of the milking system actually took place. Therefore, summary disposition in favor of defendants is reversed, and the case remanded to the trial court for further proceedings.

I

Plaintiffs are commercial dairy farmers. They entered into a contract[5] with defendant Tri County Dairy Equipment for the purchase of a milking machine. Tri County is a dealer for DEC International, a company that manufactures parts for milking systems. The equipment was delivered from defendant DEC to defendant Tri County on July 26 and 28, 1989. Defendants allege that the equipment was then delivered to plaintiffs' farm on or before July 31, 1989. Plaintiffs dispute this date, but concede that the component parts were delivered more than four years before suit was filed. Tri County, assisted by DEC, installed the milking system. Defendants contend, and plaintiffs dispute, that the machinery was installed and operational on September 8, 1989. The Michigan Department of Agriculture tested, approved, and licensed the milking system on September 12, 1989.

On September 10, 1993, plaintiffs filed suit against Tri County and DEC, claiming that the milking system was defective and had damaged their dairy operation. Defendants filed a motion for summary disposition for the breach of warranty claims, alleging that the four-year period of limitation[6] had run, and the suit was time barred. The trial court granted the motion.

---

[5] See Appendix, *post* at 264.

[6] MCL 440.2725; MSA 19.2725.

The Court of Appeals reversed and remanded. It held that tender of delivery did not occur until installation of the milking system was complete and that a genuine issue of fact existed regarding when installation was complete. 218 Mich App 248; 553 NW2d 667 (1996). We granted leave to appeal. 456 Mich 901 (1997).

II

All parties agree that the warranty provisions of Michigan's version of the UCC are controlling and that the appropriate statute of limitations is MCL 440.2725; MSA 19.2725.

Section 2725 provides:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

There have been no allegations of a warranty extending to future performance of the goods.[7] Thus, the cause of action accrued at the tender of delivery.

---

[7] Where a warranty explicitly extends to future performance, the cause of action accrues when the breach is or should have been discovered. Williston on Sales, n 3 *supra*, § 25-58, p 722.

"Tender of delivery" is defined at MCL 440.2503(1); MSA 19.2503(1):

> Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery.

Whether a good is a "conforming good" is defined in MCL 440.2106(2); MSA 19.2106(2). The statute describes a good as conforming when it is "in accordance with the obligations under the contract."[8]

The Uniform Commercial Code comment following MCL 440.2503; MSA 19.2503 observes that the term "tender" has two different meanings within the section. The first contemplates an "offer coupled with a present ability to fulfill all the conditions resting on the tendering party and must be followed by actual performance if the other party shows himself ready to proceed." This is the preferred meaning unless "the context unmistakably indicates otherwise . . . ."

The second meaning refers to an offer of goods "under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation."

---

[8] Professor Anderson observes that "it can easily be deduced that the obligation of the seller is to deliver the goods called for by the contract with the buyer. When the goods satisfy the requirements of the contract in every respect, the goods are said to be 'conforming.' " 1 Anderson, Uniform Commercial Code (3d ed), § 2-106:17, p 605.

Furthermore, "[n]on-conformity cannot be viewed as a question of the quantity and quality of goods alone, but of the performance of the totality of the seller's undertaking." *Wilke v Cummins Diesel Engines, Inc*, 252 Md 611, 618; 250 A2d 886 (1969); *Southland Mobile Home Corp v Chyrchel*, 255 Ark 366, 372; 500 SW2d 778 (1973). See also *Campbell v Pollack*, 101 RI 223, 230; 221 A2d 615 (1966).

We are persuaded that the latter definition of "tender of delivery" is more appropriate under these facts. Under MCL 440.2507; MSA 19.2507, tender of delivery is a condition to both the buyer's duty to accept the goods and his duty to pay for them. The first definition would be more appropriate where there is nonacceptance of the goods by the buyer. In order for the seller to be entitled to acceptance or payment, the seller must show that he is ready, willing, and able to perform before seeking remedies for breach of contract.[9]

The second definition of tender anticipates a latent defect in the goods, though performance of the contract *otherwise appears* to be fulfilled. Professor Hawkland, discussing the two definitions of tender, observed that the term tender is occasionally used " 'in Article 2 of the UCC as an offer by the seller to deliver what *he believes* incorrectly to be conforming goods.' "[10] Delineating tender of delivery in this manner is consistent with the policy rationale of providing "a finite period in time when the seller knows that he is relieved from liability for a possible breach of contract for sale or breach of warranty,"[11] since a seller could not plausibly believe that mere physical delivery would constitute fulfillment of the contract

---

[9] See 17A Am Jur 2d, Contracts, § 613, p 621. See also *Crowder v Aurora Co-operative Elevator Co*, 223 Neb 704, 711; 393 NW2d 250 (1986) ("Tender is essential in fixing certain rights and duties attendant to a contract for sale of goods").

[10] 2 Hawkland, Uniform Commercial Code, § 2-503:2, p 2-931 (emphasis added). See also *Ontario Hydro v Zallea Systems, Inc*, 569 F Supp 1261 (D Del, 1983); *Allied Semi-Conductors Int'l, Ltd v Pulsar Components Int'l, Inc*, 907 F Supp 618 (ED NY, 1995).

[11] *Cincinnati v Dorr-Oliver*, n 4 *supra* at 263, quoting *Ontario Hydro v Zallea Systems, Inc*, n 10 *supra* at 1267.

where installation is required under the terms of the contract.

There is support for the holding that the second definition is the more appropriate definition to be applied to UCC 2-725(2). In *Standard Alliance Industries v Black Clawson Co*, 587 F2d 813, 819 (CA 6, 1978),[12] the court observed:

> We think that "tender" as used in UCC § 2-725(2) is the latter and not the former. A contrary interpretation would extend the statute of limitations indefinitely into the future since a defect at the time of delivery would prevent proper "due tender" from taking place until it was corrected. Under section 2-725, a cause of action accrues upon initial installation of the product regardless whether it functions properly or not so long as the warranty does not extend to future performance.

In applying the second meaning of tender to the facts of this case, tender would not have occurred until the defendant offered conforming goods. The goods would not be conforming, pursuant to MCL 440.2106(2); MSA 19.2106(2), unless the goods were in accordance with the contract obligations. If installation were a term of the contract, then mere physical delivery would not fulfill defendant's contractual obligation. Only when the component parts were fully installed could the defendant be viewed as tendering goods "as if in" fulfillment of its contractual responsibilities.[13]

---

[12] See also *Jandreau v Sheesley Plumbing & Heating Co*, 324 NW2d 266, 271 (SD, 1982).

[13] The dissent cites *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992), for the proposition that the installation services were incidental to the contract for the milking machinery. While this is true, the predominant purpose test is only relevant in determining whether the UCC controls. It has no effect on the overall contractual obli-

We further hold that "tender of delivery" is not contingent upon inspection, testing, or acceptance in the absence of a clear contractual provision to the contrary. Our holding is consistent with many other jurisdictions' interpretations of the UCC.[14] In many of these cases, the buyer contends that the presence of a latent defect precludes the tender of delivery of conforming goods.[15] We agree that this argument must fail, because otherwise the limitation period provided in the statute would never apply until the seller tenders nondefective conforming goods.[16] This argument would be contrary to the purpose of the statute, which is to provide "a finite period in time when the seller knows that he is relieved from liability for a possible breach of contract for sale or breach of warranty."[17]

---

gations defendants owed to the plaintiff, and no effect on tender of delivery for the purposes of MCL 440.2725; MSA 19.2725.

*Long Island Lighting Co v Transamerica Delaval, Inc*, 646 F Supp 1442 (SD NY, 1986), is the only case cited by the dissent for the proposition that installation is not required to effectuate tender of delivery. In that case, the seller had continuing responsibility for supervising installation. The opinion distinguishes the facts of the case from *New York City v Pullman, Inc*, 662 F2d 920 (CA 2, 1981), cert den sub nom *Rockwell Int'l Corp v New York City*, 454 US 1164 (1982), in coming to the conclusion that tender of delivery occurred upon delivery. However, neither the official comments to UCC 2-503 nor other case law is discussed in reaching the holding. Because the analysis in *Long Island Lighting* is cursory and does not address all the countervailing considerations, it is questionable whether its holding represents the "better reasoned" view. *Post* at 263.

[14] Many courts have held that contractual provisions for postdelivery testing or inspection do not toll the accrual of breach of warranty claims. See *Cincinnati v Dorr-Oliver*, n 4 *supra*; *H Sand & Co, Inc v Airtemp Corp*, 738 F Supp 760 (SD NY, 1990); *Ontario Hydro v Zallea Systems, Inc*, n 10 *supra*.

[15] See *Cincinnati v Dorr-Oliver*, n 4 *supra* at 263; *Ontario Hydro v Zallea Systems, Inc*, n 10 *supra* at 1267.

[16] See *Ontario Hydro v Zallea Systems, Inc*, n 10 *supra* at 1267.

[17] *Id.* Our decision today merely holds that a seller has not tendered delivery within the meaning of MCL 440.2725; MSA 19.2725 until he has

III

Under the facts of this case, the Court of Appeals erred regarding defendant DEC in holding that the statute of limitations began to run after installation. DEC had no contractual obligation to install the milking machine. DEC's agreement was to sell the machinery to Tri County, who in turn sold the goods to the Bakers.

As to defendant Tri County, there is no clear indication that installation was a material term of the contract. Whether the contract between the parties embodied installation is a question properly determined by the trier of fact.[18] Plaintiff contends that the

---

satisfied the requisite contractual obligations, which *may or may not* include installation. The holding today is not premised on the discovery rule. We agree that the plain language of the statute renders a buyer's actual knowledge (or lack thereof) of defects totally irrelevant for the purposes of the accrual of the cause of action. We note, however, that a plain reading of MCL 440.2725; MSA 19.2725, places an affirmative obligation on the buyer to determine if the goods are defective and to seek remedies within the four-year period of limitation.

A buyer has the right to inspect for defects in goods under a sales contract "at any reasonable place and time and in any reasonable manner" under MCL 440.2513; MSA 19.2513. A buyer acts to his detriment if he does not become aware of latent defects, or does not seek the appropriate remedies for breach of implied warranties within the four-year period. The fact that a buyer's knowledge is irrelevant for the purposes of the accrual of the statute of limitations should not preclude the buyer from having the opportunity to inspect after the seller has tendered goods that otherwise conform to the contract.

[18] The dissent maintains that because installation was not an express term of the contract, tender of delivery does not require installation of the goods. *Post* at 259. The provision of the UCC dealing with parol evidence is MCL 440.2202; MSA 19.2202, which provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . . .

system was not fully installed until September 12, 1989. Defendant, on the other hand, maintains that the system was demonstrated to the plaintiff (necessarily implying that the system was installed) on September 8, 1989. Because there is a genuine issue of material fact regarding when the milking system was installed, the Court of Appeals was correct in reversing summary disposition in favor of defendant Tri County and remanding the issue to the trial court for further proceedings.

Accordingly, we affirm the decision of the Court of Appeals with respect to defendant Tri County. We reverse the decision of the Court of Appeals and reinstate the trial court's order granting summary disposition to defendant DEC.

BRICKLEY, CAVANAGH, and KELLY, JJ., concurred with BOYLE, J.

WEAVER, J. (*concurring in part and dissenting in part*). I concur with the majority's decision to reverse the judgment of the Court of Appeals and reinstate the order granting summary disposition to defendant DEC International. However, I dissent from the major-

---

Professor Anderson notes that

> [b]y definition, the parol evidence rule is not applicable when the writing is not the complete contract, in which case apart from UCC § 2-202 there is no applicable regulation of the matter. When the parties did not regard their purchase order as the final expression of their agreement, parol evidence is admissible to establish what that agreement was. [2 Anderson, Uniform Commercial Code (3d ed), § 2-202:51, p 168.]

While review of the appendix, *post* at 264, shows that there was no express provision regarding installation, we note that there is also no provision declaring that the contract was intended to serve as a complete integration of the agreement between the parties.

ity's affirmance of the Court of Appeals with regard to defendant Tri County. I would hold that installation is not a prerequisite to tender of delivery, and that in this case tender of delivery was made when the component parts were delivered to plaintiffs' farm. Accordingly, as to defendant Tri County, I would reverse the decision of the Court of Appeals and reinstate the trial court's order granting summary disposition as to both defendants.

I agree with the majority that the cause of action accrued at the time of delivery, and that "tender of delivery" is defined at MCL 440.2503(1); MSA 19.2503(1):

> Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery.

The majority states that tender has not occurred until the defendant offers conforming goods under MCL 440.2106(2); MSA 19.2106(2), which would require that the goods be installed. Subsection 2106(2) provides:

> Goods or conduct including any part of a performance are "conforming" or conform to the contract when they are in accordance with the obligations under the contract.

The majority contends that "[i]f installation were a term of the contract, then mere physical delivery would not fulfill defendant's contractual obligation." *Ante*, p 254.

The difficulty with this reasoning is that installation is part of the defendant's *conduct* under the contract,

not a definition of a characteristic of the goods.[1] For example, if a contract provided that defendant would install a machine and that defendant would provide a yearly service call on that machine for three years, the majority's reasoning would lead one to say that the goods were not conforming until they were both installed and serviced for three years.

I also find the majority's conclusion to be incorrect in light of the contract between the parties. Even if, as the majority suggests, there were an installation exception to the tender of delivery rule in the UCC, it could only be triggered by a provision in the contract that clearly provides for installation. Review of the appendix shows that there was no such provision.

Of course, parties to a contract involving the sale of a system requiring installation could avoid § 2725, e.g., with an express contract provision specifically designating that "tender of delivery" would not be complete until the system was installed, or otherwise explicitly set a different time of accrual to avoid § 2725's accrual provisions. But there is no evidence of such a contractual provision here.

Where a contract requires a seller both to provide goods and to install them, tender of delivery still occurs upon tender of delivery of the component parts under § 2725. Therefore, I would hold that tender of delivery does not require that the goods be installed.

---

[1] As in *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992), the overall thrust of the dealings between the parties reveals that the transaction was a sale of goods, and that the installation and training services were incidental to the contract for the purchase of the milking system.

The majority complains that this rule "reach[es] 'the perverse conclusion that the statute of limitations began to run *before the breach occurred.*'" *Ante,* p 249, n 4 (emphasis added). This is a misstatement. Under the UCC, "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . ." MCL 440.2725(2); MSA 19.2725(2). Thus, although plaintiffs may not have discovered the defect at the time the statute of limitations began to run, the breach has nevertheless occurred, according to the UCC, upon tender of delivery.

Section 2725 specifically provides that the aggrieved party's lack of knowledge of the breach is irrelevant. The UCC limitation provision at issue, § 2725, turns on "tender of delivery," not on inspection or acceptance/rejection. We should interpret § 2725 to give meaning to this choice. With respect to sales of goods that require installation, there might be merit in a statute of limitation that would not begin to run until installation or licensing of a system, but the language of § 2725 does not contemplate such a rule. The UCC will cease to be uniform if we depart from its plain language and create a rule that the limitation period does not begin to run until a system is installed or licensed.

I recognize that there is case law supporting a rule that, with respect to sales of goods requiring installation, "tender of delivery" does not occur until the goods are installed. Williston criticizes one such authority as improperly "mix[ing] into its reasoning the thrust of the discovery rule, stating that only after installation was completed was the buyer in a posi-

tion to determine whether or not the equipment was conforming." 3 Foran, Williston on Sales (5th ed), § 25-55, p 717. White & Summers state that under § 2725, "the clock ticks even though the buyer does not know the goods are defective." 1 White & Summers, Uniform Commercial Code (4th ed), § 11-9, p 607. White & Summers also distinguish § 2725 from tort statutes of limitation that do not run until the plaintiff discovers or reasonably should have discovered the breach. *Id.* A rule that, with respect to sales of goods requiring installation, tender of delivery does not occur until goods are installed, appears to rest on the rationale that the buyer cannot inspect or test the goods until they are installed. This rationale is unpersuasive in the context of § 2725's provision that a cause of action accrues when the breach occurs (i.e., upon tender of delivery in breach of warranty actions) "regardless of the aggrieved party's lack of knowledge of the breach." On this basis, I disagree with the authorities suggesting that tender of delivery does not occur until installation with respect to sales of goods that require installation.

This rule is consistent with many other jurisdictions' interpretations of the UCC.[2] The lead case dis-

---

[2] "Tender of delivery" is not contingent upon inspection, testing, or acceptance. *Cincinnati, Ohio v Dorr-Oliver, Inc,* 659 F Supp 259 (D Conn, 1986). The plaintiff buyer and the defendant seller entered into a contract for the purchase of sixteen centrifuges for the thickening of excess activated sludge at plaintiff's waste water treatment plant. The centrifuges were delivered on July 22, 1974. The parties' contract required extensive testing before and after installation. The equipment was not accepted by the plaintiff until November 5, 1981.

In *H Sand & Co, Inc v Airtemp Corp,* 738 F Supp 760 (SD NY, 1990), the court held that even the delivery of nonconforming goods can constitute a tender of delivery and that within the meaning of the UCC "tender and delivery" occurred upon the shipment of the goods and not upon installation and inspection. The plaintiff ordered four centrifugal chillers

cussing installation is *Long Island Lighting Co v Transamerica Delaval, Inc*, 646 F Supp 1442 (SD NY, 1986). There the court held that the tender of delivery was made when the diesel engines were shipped to the buyer, not when they were installed, even though the seller had continuing responsibility for supervising the installation.

Although there is not a unanimity of result among the other courts,[3] I would find those cases holding that installation is not a prerequisite to delivery repre-

---

from the defendant for installation in a local Port Authority Bus Terminal. The plaintiff came into physical possession of the goods by March of 1978, but contended that "tender and delivery" did not occur until the installation and inspection of the fourth and last centrifuge in January of 1979.

[3] In *Dreier Co, Inc v Unitronix Corp*, 218 NJ Super 260; 527 A2d 875 (1986), the court held that when dealing with computer systems the cause of action for a breach of warranty cannot occur until the entire system, hardware and software, is delivered and completely installed. "Tender and delivery" in terms of computer software must be viewed in the context of the complexity of computer systems. Plaintiff purchased a computer system from the defendant, consisting of hardware and "custom programmed software" for the plaintiff's needs. The defendant warranted that the equipment would be in good working order following installation within a period of 180 days.

*City of Willmar v Short-Elliott-Hendrickson, Inc*, 475 NW2d 73 (Minn, 1991). Defendant sold plaintiff a series of rotating biological contractors (RBC's) for its wastewater treatment facility. The defendant argued that the statute of limitations began to run on the date of delivery of the goods. The Court held that until the RBC's had been fully installed and tested, there could be no tender of delivery of goods, but once the goods failed to meet the standards after installation and testing, the statute of limitations began to run.

*Dowling v Southwestern Porcelain, Inc*, 237 Kan 536; 701 P2d 954 (1985). The plaintiff purchased a silo from the defendant and a third party in 1978. The parties stipulated that the third party would "assist [the plaintiff] in setting up and in training your erection and service people." The plaintiff found that the silo was not keeping the stored grain well. The third party was out of business, so plaintiff asked defendant to correct the problem. The defendant attempted to do so, unsuccessfully. The court held that the statute of limitation did not begin to run until the installation of the silo was complete, because the plaintiff purchased a "package deal" and not just the raw material needed to build the silo. *Id.* at 543.

sent the better-reasoned line of cases. The statute of limitations adopted by the UCC is designed to provide a point of finality for businesses, after which they could destroy their business records without the fear of a subsequent breach of warranty action arising from the past. See Hawkland, Uniform Commercial Code, § 2-725:02.

The plaintiffs had a remedy against defendants for four years, but failed to use it in a timely manner. Plaintiffs have now asked this Court to change the clear language of the UCC because they filed their suit over a month late. I cannot write to modify the UCC language, despite my sympathy for these plaintiffs.

Accordingly, I would reverse the decision of the Court of Appeals and reinstate the trial court's order granting summary disposition.

MALLETT, C.J., and TAYLOR, J., concurred with WEAVER, J.

APPENDIX

**TRI COUNTY DAIRY EQUIPMENT, INC.**

VAN DALE

16595 CEMENT CITY ROAD
CEMENT CITY, MICHIGAN 49233
Van Dale Feeding Equipment — Rochester Silos
Bou-Matic Milkers — Bulk Milk Tanks
Liquid Manure Equipment — Feed Mixers
Phone: 517 592-6053 Business

Rochester Silo

Date 5-11-89

Summary

G. Baker ...................................... hereinafter referred to as the Buyer of

P.O. .............. County .............. State ..............

hereby order from Tri County Dairy Equipment, hereinafter called the Seller, the following:

| Quantity | Description | | |
|---|---|---|---|
| Page | #1. Claws + Recievers | 12065 | 35 |
| | 2. Pumps Motors Reg | 7848 | 35 |
| | 3. s/s 1½" ... 3" Ells | 3154 | 60 |
| | 4. Fast Exit Stalls HD | 14128 | 00 |
| | 5. Detachers Plate Cooler | 16422 | 00 |
| | Crowd Gate | | |
| | Trade In | 53629 | 10 |
| | Blue Delaval Pump 1500 00 | 2450 | |
| | 6 Claws Chore Boy 450 00 | | |
| | 1 2" Jar 200 00 | | |
| | 1 Delaval Milkpump 200. | | |
| | Misc. Parts in old 300 | | |
| | Milk House | | |
| | Total Trade In $2450 00 | 51179 | 00 |
| | Discount — Cash — 1,179. | 179 | |

Terms — Down — Delivery — Finish

Terms or 10 Down 60 Delivery 30 Finish

Terms: Net 10 days 1½% which is 18% Annual Rate

Total Cash Price ................. 50 000 00

1 YEAR WARRANTY ON NEW PARTS $5000. Down Paid

Mats at Cost Chk day of 12 19

Purchaser further agrees that title and ownership of the above mentioned equipment remains the property of seller until final payment has been made

X Harold Baker
Purchaser's Signature

**"CERTIFICATE UNDER AGRICULTURAL PRODUCING EXEMPTION"**

The undersigned hereby certifies that all items, except as indicated hereon, are purchased for use or consumption in conjunction with the production of horticultural or agricultural products as a business enterprise and agree to reimburse the seller the sales tax if used or consumed otherwise. Illegal use of this certificate subjects persons to the penalties of the Sales Tax Act.

SIGNED X Harold Baker   B 0002